[S. F. No. 6802.   In Bank.—January 8, 1917.]

DUNCAN HAYNE, Executor of the Estate of Agnes Howard Hayne, Deceased, et al., Respondents, v. CITY AND COUNTY OF SAN FRANCISCO, Appellant.

SAN FRANCISCO—TUNNEL UNDER STREET—AMENDMENTS OF 1911 TO CITY CHARTER—ASSESSMENT DISTRICT.—The amendments of 1911 to article VI of the charter of the city and county of San Francisco (Stats. 1911, p. 1686), authorize the board of supervisors to provide by ordinance that an assessment to pay the cost and expenses of a tunnel constructed under a public street should be levied upon a special district to be approved by them.

ID.—DAMAGES TO ABUTTING LOTS—ASSESSMENT MAY INCLUDE.—Section 1 of chapter VIII of such amendments, providing that the "cost and expenses" of the construction of such tunnel may be levied upon private property, authorizes the inclusion in the assessment of allowances made to owners of abutting lots for damages caused to them by the tunnel, and by the construction thereof.

ID.—ASSESSMENT COLLECTIBLE IN ADVANCE OF DOING WORK.—The board of supervisors, after duly passing a resolution of intention to construct such tunnel, had power to levy and collect the assessment for the contemplated improvement in advance of the passage of an order for its construction, or the letting of a contract for the work.

ID.—BOARD OF SUPERVISORS—INCREASE OF AMOUNT ALLOWED FOR DAMAGES.—The board of supervisors, upon the hearing which the ordinance authorized it to hold to consider and determine, finally, the limits of the assessment district, the damages to be allowed, and the amount of the assessment, had power to increase the amount of damages beyond the proposed estimate thereof made by the board of public works in its tentative report, and to make the assessment conform to such raise.

ID.—NOTICE OF HEARING—CONTINUANCE OF MEETING.—Where due notice of the time and place fixed for such hearing had been given as required by the ordinance, which contained a provision that "said hearing may be continued from time to time by the board of supervisors and all parties interested shall be deemed to have notice of such continuance," no further notice was required to be given to nonappearing property owners to bind them by such increase in the damages and in the assessment, finally adopted by the board at a continued meeting.

ID.—SUMMARY SALE OF PROPERTY FOR ASSESSMENT—SALE BY STREET SUPERINTENDENT.—Section 33 of chapter II, of said charter, empowering the board of supervisors to adopt "any method of procedure in any general law" providing for "levying assessments for the expense" of public improvements upon private property, or, at its option, to enact an ordinance "providing a method of procedure for such improvement and assessments," and section 1 of chapter VIII, empowering the board to "levy the cost and expenses" upon private property, authorize the board to direct a summary sale of property to pay the amount assessed against it for the construction of the tunnel, and to enact an ordinance authorizing such sale by the street superintendent in advance of the doing of the work.

ID.—CONSTRUCTION OF CITY CHARTER—POWERS GRANTED.—It is an established rule that a city has no powers not expressly given by the terms of its charter or necessarily implied therefrom. In determining such powers, all of the charter is to be considered in arriving at the meaning of any part of it, whenever it appears that the context aids or controls such meaning. If with the aid of the context, or by the application of other correct rules of interpretation, the conclusion is reached that a power is granted, the rule is fully satisfied.

ID.—POSTPONEMENTS OF SALE—LENGTH OF POSTPONEMENTS.—A provision of the ordinance that if for any reason the sale does not take place on the day fixed therefor, "the sale may be continued until the next day and so on from day to day, or postponed until another day, not more than ten days thereafter," authorizes postponements from day to day, or from time to time, to be made indefinitely, but that a single postponement for a time exceeding one day must not exceed ten days; it does not forbid successive postponements of

ten days or less each, nor daily postponements exceeding in all ten days.

ID.—IRREGULARITIES IN SALE UNDER VALID ASSESSMENT—CONDITIONS TO EQUITABLE RELIEF.—Where such tunnel assessment is valid, a property owner is not entitled to any relief in a court of equity on account of irregularities in the sale, unless he pays, or offers to pay, the amount actually due upon the assessment.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco. James M. Seawell, Judge.

The facts are stated in the opinion of the court.

Percy V. Long, City Attorney, George Lull, Assistant City Attorney, and Theodore J. Savage, for Appellant.

J. A. Cooper, and Powell & Dow, *Amici Curiae*, for Respondents.

SHAW, J.—The appeal is from the judgment.

The complaint alleges that the plaintiffs are owners in common of a lot on the corner of Stockton and Washington Streets, in San Francisco, and that the defendant, without right, claims an interest therein adverse to plaintiffs. They ask judgment quieting their title. This relief the court below awarded to them.

The defendant in its answer claims a lien upon the lot by virtue of an assessment levied thereon to pay the cost of a tunnel constructed under Stockton Street from Bush Street to a point near Sacramento Street. The court below decided that the assessment was invalid and created no lien.

The same assessment was under consideration by this court in *Mardis* v. *McCarthy*, 162 Cal. 94, [121 Pac. 389]. The objections there made to the validity of the assessment were held to be untenable. Additional objections are now made, and as the plaintiffs here were not parties to that action the new objections must be considered.

The assessment was levied by proceedings under an ordinance of the board of supervisors passed in pursuance of powers given to the board by the amendments of 1911 to article VI of the city charter of San Francisco (Stats. 1911, p. 1686), consisting of a new chapter designated "chapter

VIII'' and a new section to chapter II, numbered 33. For convenience we quote section 1 of chapter VIII and section 33 in full. Section 1 of chapter VIII is as follows:

"The board of supervisors are hereby empowered to order the construction of any tunnel, subway, or viaduct, in, on, under, or over, any accepted or unaccepted open public street, avenue, lane, alley, place or court, within the city and county, or any other land of the city and county, or in, on, under, or over, any land in which and where the city and county may then have an easement or right of way therefor, and to levy the cost and expenses thereof upon private property, in the manner and under and subject to the proceedings, powers, restrictions and limitations in chapter II and chapter VII of this article provided for street work and street improvement." (There is no chapter VII.)

Section 33 of article II reads as follows:

"The methods of procedure in this article provided for the improvements of streets, or for the construction of tunnels, subways or viaducts and appurtenances thereto, and for the assessment of the expense thereof or any portion of such expense upon private property shall not be deemed exclusive, but the board of supervisors by an affirmative vote of not less than two-thirds of the members thereof, may by ordinance substitute therefor any method of procedure in any general law of the State of California now in force and effect, or as the same may be amended, or that may hereafter be enacted, providing for any such improvements in municipalities, and levying assessments for the expense or portion thereof upon private property; or the said board may by a like affirmative vote of the members thereof adopt an ordinance which may from time to time be revised or amended, providing a method of procedure for such improvement and assessment; and in such ordinance, if said board deems it expedient, provision may be made for the payment of any assessment levied in · pursuance of the provisions thereof in annual installments covering a term not to exceed ten years upon conditions as to said board may seem reasonable and just, the rate of interest to be paid on such payments not to exceed seven per cent per annum."

1. In *Mardis* v. *McCarthy* we held that the charter amendments above mentioned authorized the board of supervisors to provide by such ordinance that the cost and expenses of

the tunnel should be levied upon a special district. It is now claimed that the statement in the opinion in that case that by section 5 of chapter II, "the board of supervisors is expressly authorized to define the districts benefited by the proposed improvement and to be assessed to pay the expense thereof" is erroneous. It is true, as claimed, that section 5 does not directly confer such authority upon the board of supervisors. It gives that authority to the board of public works, which, after delimiting the district, must report and recommend its action to the board of supervisors. Other parts of chapter II, especially section 2, in effect, require that the board of supervisors shall either reject or approve such report. The section, therefore, authorizes the assessment upon a district to be approved by the supervisors, which is the vital point of the decision. We adhere to the decision in that case.

2. The assessment included an item of $191,512 made up of allowances to owners of abutting lots for damages caused to them by the tunnel and by the construction thereof. Plaintiffs claim that this was unauthorized, that the phrase, "cost and expenses," in section 1 of chapter VIII, does not include such damages. We think the phrase should be given a broader meaning. The grant of power to cause the construction of the tunnel, of itself, implies a grant of sufficient incidental powers to accomplish that object. The constitution (section 14, article I) requires the payment of all damages to abutting owners before such tunnel can be constructed. The payment thereof would be one of the necessary expenses of accomplishing the result desired. It is true it would not be a part of the expense of actual construction. The right thus paid for would not technically be a part of the material for the construction of the tunnel, but it is none the less an expense essential to such construction. The making of plans and surveys which precede the construction creates no material which goes into the work, but the cost thereof is uniformly understood to be an expense of the work. We think the payment of damages made imperative by the constitution is as much an expense or cost of the tunnel as the expense of preliminary surveys and plans, and that the charter gives the power to include it in the assessment.

This meaning is also indicated strongly, if not made imperative, by the fact that the modes for charging upon private property the damages caused by public improvements, provided in other parts of the charter, do not appear to be applicable to damages caused to property not taken, where a tunnel is made in a street already opened. Furthermore, to deny the phrase "cost and expenses" a meaning broad enough to cover such damages would make the power to provide the procedure by ordinance practically inoperative and defeat the grant thereof. Such effect should never be given to words of a law if a more consistent meaning is reasonable. (*In re Mitchell,* 120 Cal. 386, [52 Pac. 799].) There are cases where words of like import in statutes relating to public works have been held to a more restricted meaning. We do not regard them as controlling authority. Each case must depend upon its own context and upon the object and purpose to be accomplished and the effect of the narrower or broader meaning upon such object, which considerations here point to the more liberal construction above stated.

We need not consider the point that this objection was waived by the failure to protest before the board, or the point that the objection admits the validity of the assessment, in part, and plaintiffs have not paid or tendered the part admitted to be valid.

3. At the time this action was begun, and down to the time of the trial thereof, the board of supervisors had not yet ordered the construction of the proposed tunnel nor let a contract for such construction, although it had duly passed a resolution of intention to construct such tunnel. It is claimed that the power to collect the assessment lies dormant until such order has been made or such contract let. Counsel say: "It would seem that the point is unanswerable. The levying of the cost and expenses must have been after the order was made for the construction of the tunnel. After the board has made such order, then the power is given to it to levy the cost and expense upon private property." Neither the charter, nor the ordinance under which this proceeding was had, makes the existence of the power to collect the assessment conditional upon the previous exercise of the power to order the construction of the tunnel. The city and county is nowhere prohibited from collecting the necessary

funds before ordering the doing of the work. It is a well-established proposition that a municipal corporation may be empowered to levy and collect an assessment for a local public improvement before the work is ordered to be done. In Cooley on Taxation it is said: "But there is no reason in the nature of things why an assessment should not be made before the work is actually done, and before the cost shall be finally and conclusively determined," and further that the municipality acts as agent for the parties benefited and that, in order to properly perform its functions as such agent, it may be "allowed to make the assessment, and even the collection if it shall be deemed proper, in advance." (Vol. 2, 3d ed., 1266.) The following cases sustain this doctrine: *Henderson* v. *Baltimore*, 8 Md. 352; *Kingman's Petition*, 153 Mass. 584, [12 L. R. A. 417, 27 N. E. 778], *Scovill* v. *Cleveland*, 1 Ohio St. 134, *Davies* v. *Los Angeles*, 86 Cal. 37, 47, [24 Pac. 771], and *Felker* v. *New Whatcom*, 16 Wash. 183, [47 Pac. 505]. The remedy in such a case, if the improvement is abandoned, it has been held, is that the property owner will be entitled to have his payment returned. (*Valentine* v. *St. Paul*, 34 Minn. 446, [26 N. W. 457].) The constitution of 1879 originally went further, and actually prohibited the doing of such work or the making of contracts therefor to be paid by special assessment upon private property, until after the assessment had been levied and collected. (Article XI, section 19.) That plan was evidently then considered to be not only within the governmental power, but also consistent with the best public policy. In *Thomason* v. *Ruggles*, 69 Cal. 465, 467, [11 Pac. 21], speaking of the amendment of 1884, the court said: "The constitution was amended by striking out the said clause, thus leaving no constitutional restriction as to performing the work before the collection of the money and leaving it to the legislature to pass such laws in that regard as it might deem expedient." There is, therefore, no constitutional objection to the plan.

Section 33, above quoted, authorizes the supervisors to adopt the procedure prescribed in article VI of the charter, or "any method of procedure in any general law of the state," or to enact an ordinance prescribing a procedure. There were and are in force several statutes providing for the making and collection of assessments to defray

the expenses of similar public work in advance of the construction thereof, namely, the act of 1889, the act of 1893 and the act of 1903, each providing a mode for the opening of public streets through private lands (Stats. 1889, p. 70; Stats. 1893, p. 220; Stats. 1903, p. 376); the act of 1901, and the act of 1909, each for the improvement of public streets (Stats. 1901, p. 34; Stats. 1909, p. 1042); and the acts of 1891 and 1893 for changing the grades of streets and for doing the necessary work for that purpose. (Stats. 1891, p. 116; Stats. 1893, p. 91). The act of 1901 provides that the assessment for the costs and expenses must be collected before the contract is let for the work to be done. Therefore, when the board of supervisors, by the same section, is empowered to enact a procedure as a substitute for these various modes, the implied meaning of the latter grant is that such ordinance may also provide for the collection of the assessment before the doing of the work, or the letting of a contract therefor.

There is no force in the argument that before the assessment can be collected the owner must have the security of a positive order by the supervisors that the tunnel shall be constructed, and that he cannot be held liable upon a mere resolution of intention to construct it. One would be no greater protection than the other. Either could be repealed immediately after it was adopted.

The plaintiffs cite as contrary to this: *Waukegan* v. *Burnett,* 234 Ill. 460, [84 N. E. 358], *Clark* v. *Chicago,* 214 Ill. 318, [73 N. E. 358], *Gage* v. *Chicago,.* 191 Ill. 210, [60 N. E. 896], *Holdom* v. *Chicago,* 169 Ill. 109, [48 N. E. 164], *Swenson* v. *Board,* 95 Minn. 161, [103 N. W. 895], and *Hanscom* v. *Omaha,* 11 Neb. 37, [7 N. W. 739]. These cases merely decide that the assessment is void if it is based on benefits which may accrue in the future, not from the improvement to be made or thing to be done with the money raised, but from some other improvement which may or may not be made, and which is not included in or provided for by the proceedings; in other words, that the benefits assessed must be produced by the improvement to be made therewith. Thus in *Waukegan* v. *Burnett,* the assessment was to condemn a right of way for a sewer. No proceeding to lay the sewer across this land had been commenced. It was held that the land assessed would not be benefited by the acquirement of the mere right to use the strips of land, nor until some provision

was made for laying a sewer therein, and that it could not be assessed until that was done. But it was not even suggested that an assessment could not be collected after the proceeding was begun, but before the sewer was laid in pursuance thereof. The statement in Page and Jones on Taxation (sections 417 and 418), that the property owner "must have a vested right to the improvement, and to the benefits which accrue therefrom," and that a local assessment cannot be levied for an improvement which the city is free to make or not at its discretion, is based on these decisions and can mean nothing more than that where the assessment for one improvement is founded on benefits to flow solely from another improvement which is not made, or which will not accrue at all unless some other thing is done for which, as yet, no proceeding has been begun and no order has been made, such future and contingent benefit will not support the assessment. These authorities do not contravene or affect the proposition that, in the absence of constitutional restrictions, the state may provide for the payment of the assessment before the doing of the work or the letting of the contract therefor. In *Bellevue Imp. Co. v. Bellevue*, 39 Neb. 887, [58 N. W. 446], also cited by respondent, the language of the opinion is somewhat loose, but the point decided was that the assessment was void because it had been made without any regard whatever to the cost of the proposed improvement and without any estimate thereof. In the present case the ordinance enacted by the board of supervisors makes full provision for a complete and accurate estimate of the expenses of the proposed tunnel before the levying of any assessment therefor, and this procedure was scrupulously followed.

4. Another objection is that the supervisors, arbitrarily and without notice or authority, as it is claimed, raised the amount assessed against the plaintiffs from $3,317.50 to $3,351.57. We think this claim is unfounded. The raise was made in the regular course of procedure prescribed by the ordinance under which the supervisors were acting, and in pursuance of the authority given thereby and sanctioned by the charter as aforesaid. It was made by the board of supervisors upon the hearing which the ordinance authorized that body to hold to consider and determine, finally, the limits of the assessment district, the damages to be allowed, and the amount of the assessment. Such raise was necessary

because of the fact that the damages estimated by the board of public works in its tentative report to the supervisors were increased by the supervisors by the addition of $4,440. Under the terms of the ordinance the assessment was to be made by the supervisors at the close of the hearings, not by the board of public works as claimed; it was not deemed to be made and completed until that time, and the so-called raise was not a raise of the assessment, but only an increase made by the supervisors in the proposed estimate thereof reported by the works board. Such increase by the supervisors was expressly authorized by the ordinance and was not without authority.

There was no want of notice. The supervisors met at the time and place fixed for the hearing. Due notice thereof had been given as required by the ordinance. Plaintiffs did not appear and filed no protest. The supervisors proceeded with the hearing of the protests filed and decided to allow the addition of $4,440 to the damages to be paid, ordered an increase of the assessment to cover the additional sum, and then continued the hearing four weeks to give time to make the calculations made necessary by the change. No additional or personal notice was given to the plaintiffs of this continuance or of the increase in the damages and in the assessment. This is the want of notice complained of. No such additional notice was required. The ordinance provided that "said hearing may be continued from time to time by the board of supervisors and all parties interested shall be deemed to have notice of such continuance or continuances." The plaintiffs were bound by the notice of the hearing previously given, and were required to take notice that a continuance might be ordered. They had the privilege of attending at the hearing, and of contesting any claim made for increase of damages. By failing to appear they waived the right and are concluded by the result.

5. Next it is claimed that the charter does not authorize the board of supervisors to direct a summary sale of property to pay the amount assessed against it for tunnel construction, nor to enact an ordinance authorizing such sale by the street superintendent.

Section 33, chapter II, above quoted, empowers the board of supervisors to adopt "any method of procedure in any general law" providing for "levying assessments for the ex-

pense'' of public improvements upon private property, or, at
its option, to enact an ordinance ''providing a method of pro-
cedure for such improvement and assessment.'' We have re-
ferred to these general laws in discussing the third objection.
Each statute provides, as part of the procedure, a mode for
enforcing from the property owner payment of delinquent
assessments. The act of 1889, the act of 1903, and the act
of 1893 each provides for the collection of the assessment, if
delinquent, by a summary sale of the property, to be made
by the street superintendent. The acts of 1891 and 1893, for
the grading of streets, provide a like mode of collection. The
act of 1901 and the act of 1909, for the improvement of
streets, each provides for such sale by the tax collector, if
necessary to compel payment of the assessment for the cost
and expenses. The conclusion seems clear that it was in-
tended to give power, by the ordinance thus to be adopted as
a substitute for the statutory procedure, to likewise provide
a method of collection by summary sale. And, as every statu-
tory method of procedure referred to includes a mode of col-
lection of delinquent assessments, it is not reasonable to sup-
pose that it was intended to limit the board of supervisors to
the adoption of a procedure which did not include some
method of enforcing collection.

Another consideration leads to the same conclusion. It is
to be presumed that the charter intended to authorize a pro-
cedure that would be practical and effectual to accomplish
the object in view—the construction of the tunnel. In all
cases where damages may be claimed by property owners
from the doing of public work, the funds necessary to pay
the same must be first provided, the collection thereof must
precede the doing of the work. Some method of enforcing
the collection of the assessment in such cases must, therefore,
be provided. The collection could not be intrusted to a con-
tractor, since there would be none at that time. It was neces-
sary, or at least appropriate, to authorize the collection thereof
by a public officer in advance of the doing of the work and
by a summary sale rather than by a foreclosure proceeding.
Section 1, chapter VIII, authorizes the board to ''levy the
cost and expense'' upon private property. The word ''levy''
has a meaning broad enough to cover such mode of collec-
tion. In its usual sense it means the obtaining of money by
seizure and sale of property. (2 Bouvier's Dictionary, 194;·

Standard Dictionary; Webster's Dictionary; *State* v. *Camp Sing,* 18 Mont. 145, [56 Am. St. Rep. 551, 32 L. R. A. 635, 44 Pac. 516].) It is true that the word may, according to the context, mean other things, as, for example, the apportionment of the amount to be raised, the fixing of the rate, the ordering of the tax, the extending in the tax-roll of the sums to be charged, or the determination of the total amount thereof. But the amendments of the charter adopted at the same time, and relating to the same subject, are to be considered as a whole. The presumption is that they were intended to be consistent and harmonious. In view of the provisions of section 33 giving power to adopt a procedure which includes a summary sale to enforce collection of assessments, we are of the opinion that the word "levy" in section 1, chapter VIII, is to be given the broader meaning, and that it includes the sale of property to raise money. For these reasons we conclude that the sale by the street superintendent was lawfully authorized by the ordinance.

We are aware of the rule that a city has no powers not expressly given by the terms of its charter or necessarily implied therefrom. This does not do away with the rules of interpretation. All of a charter is to be considered in arriving at the meaning of any part of it, wherever it appears that the context aids or controls such meaning. If with the aid of the context, or by the application of other correct rules of interpretation, the conclusion is reached that a power is granted, the rule first stated is fully satisfied.

6. Lastly, the plaintiff objects that the sale is void because it was made more than ten days after January 14, 1913, the time fixed therefor in the notice of sale. Three days before that time a property owner obtained a temporary injunction restraining the sale. This injunction was dissolved on January 31, 1913. The findings state "that afterwards, the said tax collector proceeded to continue the sales . . . stating that he would sell the same on Friday, the 7th day of February, 1913." It is further found that on February 7, 1913, without request from any person connected with these proceedings, the tax collector continued the sale until Tuesday, February 11, 1913. There are two grounds upon which it must be held that this objection is untenable.

(a) The provision of the ordinance upon the subject is that on the day fixed for the sale, "if for any reason the sale does

not take place, the sale may be continued until the next day and so on from day to day, or postponed until another day, not more than ten days thereafter, and all parties shall be deemed to have notice of all or any such continuance or postponements.'' The contention of the plaintiff is that this clause forbids the postponement for more than ten days either by continuances from day to day, or by postponements for periods exceeding one day. There is nothing in the ordinance expressly authorizing a postponement where the sale is enjoined. It is reasonable to presume that this provision was intended to give power to postpone the sale from time to time, or from day to day, if an injunction or any other matter made it necessary to postpone the day of sale. It seems to favor the property owner as much as the city or general public. Its object is to save the expense of readvertising. We think the natural construction of the language is that postponements from day to day, or from time to time, may be made indefinitely, but that a single postponement for a time exceeding one day must not exceed ten days, that it does not forbid successive postponements of ten days or less each, nor daily postponements exceeding in all ten days.

(b) As we find the assessment to be valid, the property of the plaintiffs is justly liable for its due proportion thereof. In such cases the plaintiff is not entitled to any relief in a court of equity unless he shall pay, or offer to pay, the amount actually due upon the assessment against his property. As was said in *Ellis* v. *Witmer*, 134 Cal. 253, [66 Pac. 303], ''this being the case they cannot successfully invoke the assistance of a court of equity against the irregularities in the sale complained of, unless on the condition of paying what is due from them. Here no such condition has been imposed by the court, nor is there an offer in the complaint to pay what is due. The plaintiffs were therefore not entitled to relief.'' This states precisely the fact and the law with respect to the present case.

We find no ground upon which the decision of the court below can be sustained.

The judgment is reversed.

Sloss, J., Melvin, J., Henshaw, J., Lawlor, J., and Angellotti, C. J., concurred.

Rehearing denied.