[Civ. No. 19890. First Dist., Div. One. Oct. 19, 1962.]

JOHN H. FAHEY et al., Plaintiffs and Respondents, v. CITY COUNCIL OF THE CITY OF SUNNYVALE et al., Defendants and Appellants.

JOE V. VIVO et al., Plaintiffs and Respondents, v. CITY COUNCIL OF THE CITY OF SUNNYVALE et al., Defendants and Appellants.

(Consolidated Cases.)

Frank Gillio, City Attorney, Wilson, Harzfeld, Jones & Morton, John E. Lynch and Kirkbride, Wilson, Harzfeld & Wallace for Defendants and Appellants.

Burnett, Burnett, Keough & Cali, Burnett, Burnett & Somers, John M. Burnett and John H. Machado for Plaintiffs and Respondents.

BRAY, P. J.—In two proceedings consolidated for trial, defendants appeal from a judgment granting writs of mandate and certiorari, requiring the termination by the City Council of the City of Sunnyvale of proceedings for the levying of certain assessments and the ordering of certain work,

## Question Presented

Are petitioners' actions barred by the statute of limitations? This question requires a determination: (a) Does section 10103, Streets and Highways Code, incorporate all sections of the Improvement Act of 1911, and (b) when is the assessment referred to in section 10400 "levied"?

## Record

The Nogales Industrial Assessment District embraces within its boundaries land situated within the limits of the City of Sunnyvale and lands lying outside said city limits and within unincorporated area of the County of Santa Clara. Petitioners all own land in the city with the exception of petitioners Joe V. Vivo and Adelaide Vivo, who own land within the district in the unincorporated area.

The proceedings in question were undertaken by the city for the purpose of acquiring easements for street purposes and improving these areas by clearing, grading and paving the same, the installation therein of sewers, water mains and appurtenances, storm drain facilities, curbs, gutters and sidewalks. These improvements were to establish an industrial subdivision in an area which theretofore was raw, undeveloped acreage. The cost of the acquisition and the improvements, with the exception of a contribution by the city of $27,794, was assessed against the land in the district.

Preliminary to forming the district, the city, by resolution, requested the Santa Clara County Board of Supervisors to grant its consent to the formation of the proposed district and to the proposed acquisition of land and construction of improvements. The board gave this consent by resolution. Thereafter the city council by resolution preliminarily determined to proceed with the formation of the district and the acquisition and improvements and fixed a time for hearing protests. Written protests against the entire project were filed by owners (including petitioners) of more than one-half of the property in said proposed district, by area, by assessed valuation and by front footage.

The city council, by vote of more than four-fifths of its members, adopted resolutions overruling all protests. determining that the public interest, convenience and necessity required the formation of the district and the proposed acquisition and improvements, and that division 4 of the Streets and Highways Code should not apply. The resolution further confirmed the proposed assessments and the engineers' report and ordered the proposed improvements.

Thereafter petitioners by two separate actions sought writs of mandamus and certiorari to prevent any further proceedings by the city council. These actions were consolidated for trial. The court found that the assessments were void for certain reasons which need not be discussed, because, as we herein determine, petitioners' actions are barred by the statute of limitations, in spite of the court's determination that they were not so barred.

Judgment ensued ordering the issuance of writs of mandamus and certiorari to terminate said proceedings.

The first question to be determined is what statute of limitations applies. It is petitioners' contention that the limitation to be applied is that contained in the 1911 Improvement Act, while defendants contend, and we think correctly, that it is the limitation contained in the Municipal Improvement Act of 1913.

To solve this question it is necessary to determine whether section 10103, Streets and Highways Code (part of the Municipal Improvement Act of 1913)[1] incorporates only those sections of the Improvement Act of 1911[2] which deal with extraterritoriality or incorporates all of the sections of the 1911 act including the provision therein concerning limitations of actions.

(a) Does Section 10103 Incorporate All Sections of the Improvement Act of 1911?

The proceeding to establish the district, construct the work and levy the assessments was undertaken pursuant to the provisions of the Municipal Improvement Act of 1913. The only sections of the Improvement Act of 1911 followed by the council were 5115, 5116, 5117, and 5118, the council believing, and now contending, that section 10103 incorporated only those sections of the 1911 act which deal with extraterritoriality, that is, area of a district outside the city limits. Section 5115-5118 are such sections. Section 10103 (of the 1913 act)[3] provided: *"Improvement Act of 1911 relating to construction and assessments incorporated by reference: Matters authorized thereby.* The provisions of the Improvement Act of 1911 providing for the construction of work and the

---

[1]Hereinafter referred to as the 1913 act. It is set forth in section 10000 et seq., Streets and Highways Code.

[2]This act will be referred to as the 1911 act. It is set forth in section 5000 et seq., Streets and Highways Code.

[3]All reference to code sections herein, except where otherwise noted, are to such sections as they existed in 1960, the time of the trial herein. Some of them have been amended since.

levy of an assessment by a city within a county or by a county within a city, are incorporated in this division as if fully set out herein. Upon taking the proceedings provided in that act, a city may construct improvements and levy an assessment in a county or in another city, a county may construct improvements and levy an assessment within a city, and a public corporation may construct improvements outside of its boundaries either within a city or within a county. The consent required by that act shall be obtained before the recordation of the assessment.''

The 1913 act and the 1911 act are generally coextensive, providing alternate methods of constructing improvements of a local nature and financing them by levying assessments. There are no restrictive provisions in the 1913 act which would preclude the establishment of a district to construct the improvements contemplated by the Nogales District and to levy assessments therefor. (§ 10102.) That district, however, included land in Santa Clara County. There are no independent provisions in the 1913 act which authorize this. Therefore, section 10103 was placed in that act providing that the provisions of the 1911 act ''providing for the construction of work and the levy of an assessment *by a city within a county* or by a county within a city'' (emphasis added) are incorporated in the 1913 act.

Sections 5115 through 5118 are the only sections in the 1911 act which deal with such situation. Section 5115 provides in effect that when in the opinion of the city ''the proposed work is of such a character that it directly and peculiarly affects property in two or more cities, or in one or more cities and counties,'' and that the purposes sought to be accomplished by the work can best be accomplished by a single, comprehensive scheme of work, there is conferred on the city council ''full power and authority to extend the work or the boundaries of the district to be assessed therefor beyond the territorial limits of the city.''

Section 5116 provides the nature of work which the city council may authorize, in the adjacent county area. Section 5117 provides in effect that if the consent of the governing body of the county is obtained the city may include within the boundaries of an assessment district lands lying within the county. Section 5118 provides in pertinent part that the consent, if obtained, ''shall, of itself, constitute assent to the assumption of jurisdiction thereover for all purposes of the proceeding and authorize the legislative body initiating the

proceeding to take each and every step required for or suitable for the consummation of the work extending outside the limits of the city, and the levying, collecting and enforcement of the assessments to cover the expenses thereof and the issuance and enforcement of bonds to represent unpaid assessments.'' It is conceded that the court found that the council followed sections 5115-5118.

The court's interpretation of section 10103 precludes the use of the 1913 act to construct improvements and to levy assessments where extraterritoriality is involved, and the use of its provisions where work is being done ''by a city within a county or by a county within a city. . . .'' As a city may not act beyond its territorial limits without specific legislative authority[4] such would be the result if section 10103 were not enacted. So if such is its meaning, why was it enacted? Such an interpretation leaves the section meaningless.

''It is a cardinal rule in the construction of statutes that they should be given one which will sustain rather than defeat them,—which will make them operative, if the language will permit, rather than render them without effect. . . .'' (*Glassell Dev. Co.* v. *Citizens' Nat. Bank* (1923) 191 Cal. 375, 384 [216 P. 1012, 28 A.L.R. 1427].)

To give section 10103 meaning requires that it be construed to provide that only those provisions of the 1911 act incorporated in the 1913 act are those which deal with extraterritoriality. A study of the language of section 10103 supports this conclusion. The first sentence states: *''The provisions* of the Improvement Act of 1911 *providing for the construction of work and the levy of an assessment by a city within a county* or by a county within a city, are incorporated. . . .''* (Emphasis added.) Thus, only the provisions of the 1911 act dealing with construction and assessment by a city within a county or by a county within a city are referred to. No reference is made to other provisions of the 1911 act. The second sentence again makes it clear that the section has a limited application: ''Upon taking the proceedings provided in that act, a city may construct improvements and levy an assessment in a county or in another city. . . .'' What proceedings are referred to? Obviously, those proceedings which the 1911 act requires to be taken to give the city jurisdiction over the outside territory. In doing special assessment work *within* the city and levying assessments therefor a city has the

---

[4]Except in certain instances not applicable here.

choice of proceeding under either the 1911 or 1913 act. No good reason appears why the Legislature would intend to prevent the use of the 1913 act for extraterritorial work, which would be the situation under the court's interpretation of section 10103. The second sentence in that section gives the city jurisdiction to "construct improvements and levy an assessment in a county . . ." "[u]pon taking the proceedings provided in that act. . . ." The latter phrase refers to the provisions of the act of 1911 which provide for the construction and assessment by a city within a county, not the general provisions of that act. Otherwise the Legislature would be considered to require that while a city has the option of using one of two acts for the creation and operation of assessment districts within the city it is limited to one act where the district includes land without the city. Had the Legislature so intended there would have been no reason for adopting section 10103.

The last sentence of that section reads: "The consent required [that is, of the county] by that act [the 1911 act] shall be obtained *before the recordation of the assessment.*" (Emphasis added.) The 1913 act contemplates the recordation of the assessment prior to the commencement of construction (Sts. & Hy. Code, §§ 10312-10401). The 1911 act provides for the recordation *after the completion of the work.* The sentence above quoted would be meaningless in a proceeding under the 1911 act, since the consent need not be secured until after the work was completed. This would lead to a possible situation in which the work would be done, and the city would then apply to the county for consent to the formation of the district which had already been formed and to the work which had already been done. If the county failed to consent there would be no way of paying for the work done in the county area. The possibility of such a ridiculous situation resulting clearly shows that it was the intent of the Legislature that only those sections of the 1911 act applicable to a district including outside territory were intended to be incorporated in the 1913 act.

The proper interpretation of section 10103 is that it incorporates in the 1913 act only those provisions of the 1911 act which deal with extraterritoriality. That this is the interpretation of the section intended by the Legislature is shown by the recent amendment of the section. It was amended (Stats. 1961, ch. 1432, p. 3238) effective July 12, 1961, to read as follows (the deletions are in strike-out type and the new lan-

guage is italicized) : ''The provisions of ~~the Improvement Act of 1911~~ *Chapter 2 (commencing with Section 5115) of Part 3 of Division 7 of this code* providing for the construction of work and the levy of an assessment by a city within a county or by a county within a city, are incorporated in this division as if fully set out herein. Upon *obtaining the consent re-required* ~~taking the proceedings provided~~ in that ~~act~~ *chapter,* a city may construct improvements and levy an assessment in a county or in another city, a county may construct improvements and levy an assessment within a city, and a public corporation may construct improvements *and levy an assessment* outside of its boundaries either within a city or within a county. ~~The consent required by that act shall be obtained before the recordation of the assessment.~~ *If no assessment is to be levied outside the boundaries of the city, county, or public corporation conducting the assessment proceedings, the proposed resolution of intention need not be submitted or approved and the consent required shall be obtained prior to the ordering of the improvement.*

''*Sec. 2. This act is an urgency measure necessary for the immediate preservation of the public peace, health and safety within the meaning of Article IV of the Constitution and shall go into immediate effect. The facts constituting such necessity are:*

''*It is necessary that the provision for exercise of extra-territorial jurisdiction be more clearly stated in the Municipal Improvement Act of 1913. Clarity of the law is essential to the conduct of bonding proceedings in order to obtain mer-chantable legal opinions supporting the legality of bonds and to avoid wasteful interpretative litigation. Many areas are in urgent need of improvements which can be most econom-ically constructed and financed under said act as single proj-ects, regardless of territorial boundaries, during the spring and summer of 1961, before the advent of winter rains. It is, therefore, imperative that this act take effect immediately.*''

It is to be noted that chapter 2 of part 3 of division 7 of the Streets and Highways Code is composed of sections 5115-5119, exactly what we have determined is all that is incor-porated in the section before amendment. Section 2 of the amended section clearly shows that the amendment was in-tended only to clarify the prior law.

An amended statute may be looked to in construing the prior one. (*Koenig* v. *Johnson* (1945) 71 Cal.App.2d 739, 753-755 [163 P.2d 746]; see also *People* v. *Puritan Ice Co.*

(1944) 24 Cal.2d 645, 653 [151 P.2d 1]; 2 Sutherland, Statutory Construction (3d ed.), § 5015.) ▮▮▮▮ And where an amendment is only for the purpose of clarification it is merely a restatement of the prior law in a clearer form, the law before the amendment being the same as after it. (*W.R. Grace & Co.* v. *California Emp. Com.* (1944) 24 Cal.2d 720, 729-730 [151 P.2d 215]; *Koenig* v. *Johnson, supra,* 71 Cal.App.2d at p. 755.)

As the portions of the act of 1911 incorporated by section 10103 in the 1913 act do not include the limitation portions of the 1911 act, we must look to the 1913 act to determine what limitations of action appear therein, and then determine whether the actions are barred by such limitations.

(b) WHEN THE ASSESSMENT IS LEVIED

▮▮▮▮ Section 10400, Streets and Highways Code, the section of the 1913 act pertinent here, provided: "The validity of an assessment or supplementary assessment levied under this division shall not be contested in any action or proceeding unless the action or proceeding is commenced within 30 days after the assessment is *levied.*" (Emphasis added.)

The "Resolution Determining Convenience and Necessity, Adopting Engineer's Report, Confirming Assessment and Ordering Work and Acquisitions" was adopted November 24, 1959. In that resolution the council found that the assessment of the costs and expenses of the proposed acquisition and improvements upon the several subdivisions of land in the district in proportion to the estimated benefits to be received by said subdivision, respectively, "be and the same is hereby, finally approved and confirmed as the assessment to pay the costs and expenses of said acquisitions and improvements."

The first action was filed December 30, 1959, 36 days after the assessment was levied by said resolution. The second action was filed January 11, 1960, 48 days thereafter. Petitioners contend that the assessment is not levied by the above mentioned resolution but only after the city clerk, following the adoption of the resolution, transmits to the city tax collector the diagram and assessment (§ 10401), and the tax collector records the assessment (§ 10402) in the office of the superintendent of streets and in the office of the county surveyor. This recording occurred December 1, 1959. Thus, say they, the first action was filed within 30 days thereafter. However, they do not discuss the situation as to the second action, which was not filed until 40 days after such recording. That action,

even under petitioners' interpretation of when the assessment is "levied" (§10401), was too late and should have been dismissed.

When was the assessment levied? ██ Section 10312 provided: "When upon the hearing the proposed assessment is confirmed as filed, as modified, or corrected, by resolution the legislative body shall order the proposed improvement to be made or acquired, and *declare its action upon the report and assessment.* The resolution shall be final as to all persons, and the *assessment thereby levied* upon the respective subdivisions of land in the assessment district." (Emphasis added.) Thus section 10312 shows that the action upon the report and assessment which the council is to "declare" is the levying of the assessment. The levying of an assessment is a quasi-judicial act. It cannot be done by the ministerial officers such as the clerk, tax collector, etc. It is done by the city council. ██
As said in *Smith* v. *Byer* (1960) 179 Cal.App.2d 118, 121 [3 Cal.Rptr. 645], with respect to real property taxes, "The word 'assessment' in the section refers to the act of the assessor. The word 'levied' refers to the act of the board of supervisors or city council. (*Allen* v. *McKay & Co.,* 120 Cal. 332 [52 P. 828].)'" ██ Although the assessment is not a tax (see *Creighton* v. *Manson* (1865) 27 Cal. 613, 620), it, like a tax, can only be levied by a legislative body. Cases dealing with "levy" of writs of attachment cited by petitioners are not in point. ██ The fact that the assessment does not become a lien until the date of recordation (§ 10402) does not affect the necessary conclusion from the provisions of section 10312 that when the council "declares" its action upon the report and assessment the assessment is "thereby levied." The resolution of November 24 was the type of resolution referred to in section 10312.

██ The word "levied" has a variety of meanings. For example, it may mean the apportionment of the amount to be raised, the fixing of the rate, the ordering of the tax or assessment, the extending in the tax roll of the sums to be charged, or the determination of the total amount thereof. It may mean a provision for the collection of the cost of public improvements by a public officer in advance of the doing of the work by a summary sale rather than by foreclosure proceedings. (See *Hayne* v. *City & County of San Francisco* (1917) 174 Cal. 185, 196 [162 P. 625].) Its meaning must be determined by the context in which it is used.

Thus section 2151, Revenue and Taxation Code, provides,

concerning property taxation, ''The board of supervisors shall fix the rates of county and district taxes and *shall levy* the State, county, and district taxes as provided by law.'' (Emphasis added.) Section 2152 provides, ''The auditor shall *then*'' (emphasis added) compute the sums to be paid upon the property listed. Thus, the tax is *levied* before the amount assessed against the particular piece of property is determined. Section 2153 provides ''A tax of one-tenth of one per cent is *hereby levied* on the actual value of solvent credits and any interest therein.'' (Emphasis added.) In this instance the tax is *levied* before value and ownership of the property levied upon are determined. ▮ The *levy* of a tax and the imposition of a lien are two separate matters. They may be provided to take effect at the same time, but not necessarily so. There must be an express provision of law to make them effective at the same time. As pointed out in *County of San Diego* v. *County of Riverside* (1899) 125 Cal. 495, 500 [58 P. 81], concerning taxes, ''the assessment does not create the lien. It is merely one of the steps for its enforcement.''

Here the Legislature has stated that the assessment ''thereby levied'' by the resolution provided for in section 10312 shall be final. This is the context in which we must construe the meaning of ''levied.'' If, as contended by petitioners, the assessment is not thereby levied, when and how could it become final?

▮ In 14 McQuillin, Municipal Corporations (3d ed.), p. 260, ''levy'' is defined: ''With reference to assessments for local improvements, it means to charge upon the property which must respond to the assessment a sum of money already ascertained.'' (See also *People* v. *Mahoney* (1939) 13 Cal.2d 729, 735-736 [91 P.2d 1029].)

▮ Section 10204 requires that the report on which the resolution provided for in section 10312 is based shall contain among other matters ''(d) A diagram showing the assessment district and the boundaries and dimensions of the subdivisions of land within the district as they existed at the time of the passage of the resolution of intention. Each subdivision shall be given a separate number upon the diagram. (e) A proposed assessment of the total amount of the cost and expenses of the proposed improvement upon the several subdivisions of land in the district. . . . The assessment shall refer to the subdivisions by their respective numbers as assigned pursuant to subdivision (d) of this section.''

The report on which the resolution of November 24 was

based fully complied with section 10204. Thus, the property and the subdivisions thereof in the district were charged with the assessments thereby levied, meeting the definition of "levy" in *McQuillin, supra.*

There is nothing in the language of section 10312 which is uncertain or ambiguous. To adopt petitioners' interpretation of the section would require the complete disregard of the words "and the assessment thereby levied upon the respective subdivisions of land in the assessment district." Whatever the word "levied" may mean in other statutes, the Legislature has stated in this section that the assessment to be stated in the resolution is *levied* by the adoption of the resolution. Section 10400 requires any court contest of the validity of the proceeding to be commenced within 30 days thereafter. Neither proceeding was brought in time. Therefore, the trial court had no jurisdiction to proceed other than to dismiss the proceedings.

In view of our determination, it is unnecessary to consider any other of the contentions made on appeal.

The judgment is reversed and the trial court directed to dismiss the petitions and complaints.

Sullivan, J., and Molinari, J., concurred.

A petition for a rehearing was denied November 15, 1962, and respondents' petition for a hearing by the Supreme Court was denied December 12, 1962.