TO BE PUBLISHED IN THE OFFICIAL REPORTS

OFFICE OF THE ATTORNEY GENERAL
State of California

JOHN K. VAN DE KAMP
Attorney General

------------------------------
:
OPINION                      :
                             :       No. 88-603
        of                   :
                             :       SEPTEMBER 15, 1988
JOHN K. VAN DE KAMP          :
   Attorney General          :
                             :
RODNEY O. LILYQUIST          :
Deputy Attorney General      :
                             :
----------------------------------------------------------------

        THE HONORABLE WILLIAM A. CRAVEN, MEMBER OF THE CALIFORNIA
SENATE, has requested an opinion on the following question:

        In calculating the allocation of property tax revenues when a city incorporates but
does not assume all service responsibilities for its territory, are the calculations to include (1) funds
carried over to the prior fiscal year from a previous year or (2) funds derived from charges for
licenses, permits, and such services as law enforcement services furnished under contract to other
governmental agencies?

CONCLUSION

        In calculating the allocation of property tax revenues when a city incorporates but
does not assume all service responsibilities for its territory, the calculations are not to include (1)
funds carried over to the prior fiscal year from a previous year or (2) funds derived from charges for
licenses, permits, and such services as law enforcement services furnished under contract to other
governmental agencies where the charges are levied specifically to offset the cost of the particular
services and do not exceed the cost reasonably borne in providing the services.

ANALYSIS

        Since the addition of article XIII A to the Constitution in 1978, the distribution of
property tax revenues to cities, counties, and special districts has been subject to and controlled by
a statutory allocation formula. (See Rev. & Tax. Code, §§ 93-100; Amador Valley Joint Union High
Sch. Dist. v. State Bd. of Equalization (1978) 22 Cal.3d 208, 218; American Canyon Fire Protection

Dist. v. County of Napa (1983) 141 Cal.App.3d 100, 105-106; 70 Ops.Cal.Atty.Gen. 87, 88 (1987).)

While many factors are considered in the property tax distribution calculations, the Legislature has given particular attention to the amount of services furnished by each local agency to the area generating the property taxes.[1] When these service responsibilities are transferred from one governmental agency to another, such as when a new city incorporates and assumes the service responsibilities for its area, the amount of property tax revenues received by the affected agencies also changes under the Legislature's allocation formula.

The question presented for resolution concerns the incorporation of a city that does not assume responsibility for all services previously furnished to its territory. The county and special districts will continue to provide a limited number of services to the area. Government Code section 56842[2] governs the transfer of property tax revenues in such circumstances. It provides in part:

"(a) If the proposal includes the incorporation of a city, as defined in Section 56043, or the formation of a district, as defined in Section 2215 of the Revenue and Taxation Code, the commission shall determine the amount of property tax revenue to be exchanged by the affected local agency pursuant to this section.

"(b) The commission shall notify the county auditor of the proposal and the services which the new jurisdiction proposes to assume within the area, and identify for the auditor the existing service providers within the area subject to the proposal.

"(c) If the proposal would not transfer all of an affected agency's service responsibilities to the proposed city or district, the commission and the county auditor shall do all of the following:

"(1) The county auditor shall determine the proportion that the amount of property tax revenue derived by each affected local agency pursuant to subdivision (b) of Section 93 of the Revenue and Taxation Code bears to the total amount of revenue from all sources, available for general purposes, received by each affected local agency in the prior fiscal year. For purposes of making this determination and the determination required by paragraph (3), 'total amount of revenue from all

---

[1] For a particular area, such services as police and fire protection, water, sewage disposal, road maintenance, street lighting, trash collection, and mosquito abatement, as well as the operation of such facilities as a bus system, parks, flood control projects, cemeteries, airports, libraries, and swimming pools may be divided among a county, city, and several special districts. (See, e.g., Gov. Code, § 61600; Health & Saf. Code, § 4113; Pub. Resources Code, § 5782.2; Wat. Code, § 35401.)

[2] All references hereafter to the Government Code are by section number only.

sources available for general purposes' means the total amount of revenue which an affected local agency may use on a discretionary basis for any purpose and does not include any of the following:

"(A) Revenue which, by statute, is required to be used for a specific purpose.

"(B) Revenue from fees, charges, or assessments which are levied to specifically offset the cost of particular services and do not exceed the cost reasonably borne in providing these services.

"(C) Revenue received from the federal government which is required to be used for a specific purpose.

"(2) The commission shall determine, based on information submitted by each affected local agency, an amount equal to the total net cost to each affected local agency during the prior fiscal year of providing those services which the new jurisdiction will assume within the area subject to the proposal. For purposes of this paragraph, 'total net cost' means the total cost which was funded by general purpose revenues of the affected local agency and excludes any portion of the total cost which was funded by any revenues of that agency which are specified in subparagraphs (A), (B), and (C) of paragraph (1).

"(3) The commission shall multiply the amount determined pursuant to paragraph (2) for each affected local agency by the corresponding proportion determined pursuant to paragraph (1) to derive the amount of property tax revenue used to provide services by each affected local agency during the prior fiscal year within the area subject to the proposal.

" . . . . . . . . . . . . . . . . . . . . . . . .

"(e) The executive officer shall notify the auditor of the amount determined pursuant to paragraph (3) of subdivision (c) . . . at the time the executive officer records a certificate of completion pursuant to Section 57203 for any proposal described in subdivision (a), and the auditor shall transfer that amount to the new jurisdiction." (Emphases added.)[3]

---

[3]The "commission" is the local agency formation commission established for the county.

Revenue and Taxation Code section 93, subdivision (b) states: "A county shall levy an ad valorem property tax on taxable assessed property," with the revenue "distributed . . . . to local agencies, school districts, county superintendents of schools, and community college districts in accordance with the provisions of the Government Code."

The question is: are the calculations of section 56842 to include (1) funds carried over to the prior fiscal year from a previous year or (2) funds derived from charges for licenses, permits, and such services as law enforcement services furnished under contract to other governmental agencies? We conclude that they are not.

In analyzing section 56842, we first note that cities, counties, and special districts are able to obtain funds from a variety of sources other than property taxes. Indeed, because article XIII A of the Constitution places a limitation upon the collection of property taxes, the Legislature has encouraged local governments to seek alternative methods of financing their community services. (See § 16270; Marin Hospital Dist. v. Rothman (1983) 139 Cal.App.3d 495, 499-500; 70 Ops.Cal.Atty.Gen. 87, 88 (1987).) Besides receiving grants from the federal government and the state, local agencies may generate revenues from such sources as regulatory fees, user charges, special assessments, and special taxes. (See §§ 25210.77a, 26400, 54985; San Marcos Water Dist. v. San Marcos Unified School Dist. (1986) 42 Cal.3d 154, 160-165; J. W. Jones Companies v. City of San Diego (1984) 157 Cal.App.3d 745, 752-757; Mills v. County of Trinity (1980) 108 Cal.App.3d 656, 659-660; Dare v. Lakeport City Council (1970) 12 Cal.App.3d 864, 868-869; 70 Ops.Cal.Atty.Gen. 153, 155-156 (1987); 70 Ops.Cal.Atty.Gen. 87, 88 (1987).)

Although the calculations of section 56842 govern the transfer of property tax revenues from one local agency to another, they are based in part upon the receipt of other types of revenues available to fund the services to be transferred. When this formula language was incorporated into the provisions of section 56842 in 1986 (Stats. 1986, ch. 956, § 1), the report of the Senate Local Government Committee explained its operation and effect as follows:

"When a new city or special district takes over all the service responsibilities of an existing local agency, Assembly Bill 672 requires the local agency formation commission (LAFCO) to request the county auditor to determine the property tax revenues generated by the existing agency. AB 672 then requires the county auditor to transfer that amount to the new city or district.

"When a new city or special district takes over some but not all of an existing local agency's services, AB 672 requires the county auditor to determine the relationship between the existing agency's property tax revenues and its total general purpose revenues. LAFCO then determines the total net cost of each service which the new city or district will assume. Then LAFCO multiplies the net cost by the property tax ratio to determine how much property tax revenue will go to the new city or district. The bill requires the county auditor to transfer that amount to the new city or district."

The section 56842 formula may be described in the following terms:

|           (1)            |   |      (2)      |   |    (3)     |
| :----------------------: | - | :----------: | - | :--------: |
|      tax receipts        |   |   cost of    |   | taxes to be |
|    general revenue       | x |   services   | = | transferred |
|        receipts          |   |  transferred |   |            |

If, for example, general revenues were received by a special district in the amount of $1,000,000 during the prior fiscal year, of which $600,000 constituted property tax receipts, and its net cost of services to be assumed by the new city was $100,000 for the prior fiscal year, $60,000 in property tax revenues would be transferred from the special district to the new city. The calculations would be:

$$\frac{\$600,000}{\$1,000,000} \quad x \quad \$100,000 \quad = \quad \$60,000$$

If the total general revenue receipts had been larger, such as $1,200,000, the property tax revenue proportion would be reduced and accordingly a lesser amount in taxes would be transferred. The calculations would be:

$$\frac{\$600,000}{\$1,200,000} \quad x \quad \$100,000 \quad = \quad \$50,000$$

It is apparent that the new city will not require as much in property taxes if general revenues are readily available from other sources. The affected transferring agency, on the other hand, will no longer need those property taxes previously used to fund the transferred services.

Of particular significance is the fact that excluded from the calculations of section 56842 are funds required under state or federal law to be used for a specific purpose and funds received to offset certain costs of various services. These revenues will continue to be received by the transferring agency or begin to be received by the new city to the extent each furnishes the specified services. Neither is thus pertinent to a determination of what property tax revenues should be transferred between the two entities.

A. Carry-Over Funds

The first part of the question concerns funds that have been carried over to the prior fiscal year from a previous fiscal year. Do these funds constitute "revenue . . . received . . . in the prior fiscal year"?

A common definition of "revenue" is "the annual or periodical yield of taxes, excises, customs, duties, and other sources of income that a nation, state, or municipality collects and receives into the treasury for public use." (Webster's New Internat. Dict. (3d ed. 1971) p. 1942.)

It is a source or sources of payment, consideration, or income. (See §§ 23800, 26400.) To "receive" is "to take possession or delivery of . . . to take in . . . acquire." (Webster's, supra, p. 1894.) On the other hand, to "carry over" funds is "to hold over . . . for another season" or to carry forward that which has already been received. (Id. at p. 344.)

Under these definitions of the terms used by the Legislature, the carry-over funds here do not constitute revenue received in the prior fiscal year. It was in the year previous to the prior fiscal year that they were received and delivered into the treasury for a public purpose. We find no basis for counting them twice as a source of payment; they were merely being retained for an additional time period, waiting to be appropriated. We are directed to interpret the words of a statute by "giving them their usual and ordinary meaning." (Committee of Seven Thousand v. Superior Court (1988) 45 Cal.3d 491, 501; Schmidt v. Superior Court (1987) 43 Cal.3d 1060, 1065-1066; Young v. Haines (1986) 41 Cal.3d 883, 897.)

This construction of section 56842 is also consistent with other legislative acts indicating that revenues are "received" only once and thereafter are retained in reserve, designated to a specific reserve, transferred to a different account, or appropriated. (See §§ 29085, 29086, 29092, 29124, 29125, 29126.1, 29130.) "[E]very statute should be construed with reference to the whole system of law of which it is a part, so that all may be harmonized and have effect." (Moore v. Panish (1982) 32 Cal.3d 535, 541.)

Including carry-over funds in the section 56842 calculations would not provide the new city with sufficient property tax revenues to finance the services transferred. The city would not have accumulated carry-over funds to finance the services. Instead it must look to new sources of revenue. The statutory formula contemplates that the city will have the same general authority to generate funds as the transferring agency. Carry-over funds do not meet the test of ready availability.

It should be noted that the formula contained in section 56842 restricts consideration of the tax receipts as well as the general revenue receipts to those of the prior fiscal year. This provides consistency and bases the calculations on the most recent experience in financing the services in question. To include carry-over funds in the general revenue receipts category would open up the fraction denominator of the formula while the numerator remained restricted. Uniformity would be lost, and more remote and additional periods would be considered that failed to reflect the current ability of either the transferring agency or the city to generate funds.

Finally, our conclusion effectuates the purpose of section 56842 as expressed in subdivision (c)(3): "to derive the amount of property tax revenue used to provide services . . . during the prior fiscal year within the area." The Legislature has used a collective approach in determining the amount of tax receipts and general revenue receipts used to fund the particular services. Such formula eliminates extraordinary situations and instead focuses on the general manner in which the transferring agency did (and the new city presumably will be able to) generate funds to finance the services. Again, carry-over funds have no place in such calculations. We follow the primary rule of statutory construction "to ascertain and effectuate legislative intent." (People v. Woodhead

(1987) 43 Cal.3d 1002, 1007; People v. Jeffers (1987) 43 Cal.3d 984, 993; People v. Overstreet (1986) 42 Cal.3d 891, 895.)

We thus conclude in answer to the first part of the question that in calculating the allocation of property tax revenues when a city incorporates but does not assume all service responsibilities for its territory, the calculations are not to include funds carried over to the prior fiscal year from a previous year.

### B. Charges For Licenses, Permits, and Services

The second part of the question concerns charges for licenses, permits, and such services as law enforcement services furnished under contract to other governmental agencies. Are these included in or excluded from the section 56842 calculations? We conclude that they are excluded to the extent they did not exceed the cost reasonably borne in providing the particular services.

These charges were "received by each affected local agency in the prior fiscal year." We believe that they were also "available for general purposes" and used "on a discretionary basis for any purpose." The fact that the charges were generated by particular activities does not mean that they were required to be segregated by the affected agency and used only to fund the same kinds of activities that generated them. Here neither the state nor the federal government has required by statute that the charges were to be used for a specific purpose. The sources of the charges did not limit the local agency's ability to spend the moneys received as it chose.

While these charges would thus meet the general test for inclusion in the section 56842 calculations, the Legislature has also specified certain exclusions.[4] The exclusion applicable here is for "fees, charges, or assessments which are levied to specifically offset the cost of particular services and do not exceed the cost reasonably borne in providing these services." (§ 56842, subd. (c)(1)(B).)

The term "levied" has different meanings depending upon its context. (See Huntington Park Redevelopment Agency v. Martin (1985) 38 Cal.3d 100, 106-107; People v. Schwartz (1947) 31 Cal.2d 59, 63-64; Hayne v. San Francisco (1917) 174 Cal. 185, 196; Bell Community Redevelopment Agency v. Woosley (1985) 169 Cal.App.3d 24, 32; Alpha Beta Acme Markets, Inc. v. City of Whittier (1968) 262 Cal.App.2d 16, 21-22; Fahey v. City Council (1962) 208 Cal.App.2d 667, 677-679; McDonald v. Richards (1926) 79 Cal.App.1, 7.) It may refer to the legislative act of setting the amount to be collected (Wardell v. State of California (1947) 29 Cal.2d 639, 642-643; People v. Mahoney (1939) 13 Cal.2d 729, 735-736; Fahey v. City Council, supra, 208

---

[4]"The Legislature has power to prescribe legal definitions of its own language, and when an act passed by the Legislature embodies a definition it is binding on the courts." (In re Marriage of Stephens (1984) 156 Cal.App.3d 909, 913.) We accordingly follow the definitions in section 56842 that are applicable to its terms.

Cal.App.2d 667, 677-679; Smith v. Byer (1960) 179 Cal.App.2d 118, 121) or the ministerial act of collecting the amount previously determined (Hayne v. San Francisco, supra, 174 Cal. 185, 195-196; Alpha Beta Acme Markets, Inc. v. City of Whittier, supra, 262 Cal.App.2d 16, 22; McDonald v. Richards, supra, 79 Cal.App. 1, 7-8). Usually what is being levied is referred to as a "tax" (see City of Burbank v. Metropolitan Water District (1960) 180 Cal.App.2d 451, 459), but fees and charges for services furnished may also be referred to as being levied (see § 54985; Dare v. Lakeport City Council (1970) 12 Cal.App.3d 864, 868-869).

Here section 56842 refers to "[r]evenue from fees, charges, or assessments which are levied . . ." as an exception to "revenue from all sources . . . received by each effected local agency in the prior fiscal year." In such context, accordingly, the term "levied" would include the administrative collection function of receiving the money into the public treasury. (See People ex rel. Happell v. Sischo (1943) 23 Cal.2d 478, 493; County of Fresno v. Malmstrom (1979) 94 Cal.App.3d 974, 979.)

In order to be excluded from the calculations, the license, permit, and service charges must be "levied to specifically offset the cost of the particular services" and "not exceed the cost reasonably borne in providing these services." With respect to license and permit charges, we believe that the term "services" would appropriately cover those services associated with the license or permit being issued, such as administering, regulating, and enforcing the licensing or permit program. (See United Business Com. v. City of San Diego (1979) 91 Cal.App.3d 156, 165-167.)

In this regard, we note that whether charges "exceed the cost reasonably borne in providing the services" is significant not only for applying the provisions of section 56842 but also for purposes of the tax limitations of article XIII A of the Constitution (see Pennell v. City of San Jose (1986) 42 Cal.3d 365, 374-375; Terminal Plaza Corp. v. City and County of San Francisco (1986) 177 Cal.App.3d 892, 906-907; Briarwood Properties, Ltd. v. City of Los Angeles (1985) 171 Cal.App.3d 1020, 1021-1032; Beaumont Investors v. Beaumont-Cherry Valley Water Dist. (1985) 165 Cal.App.3d 227, 234; Mills v. County of Trinity (1980) 108 Cal.App.3d 656, 662-663) and the government spending limitations of article XIII B of the Constitution (see Huntington Park Redevelopment Agency v. Martin, supra, 38 Cal.3d 100, 107; County of Placer v. Corin (1980) 113 Cal.App.3d 443, 451-452). In keeping with these constitutional limitations, the Legislature has specifically authorized local governments to levy charges in various situations if the charges are limited to covering the costs incurred. (See, e.g., § 54985 ["in the amount reasonably necessary to recover the cost of providing any product or service or the cost of enforcing any regulation for which the fee or charge is levied"].)

Since a local government may also exercise a revenue raising power without regard to the specific service costs involved (see The Pines v. City of Santa Monica (1981) 29 Cal.3d 656, 660-663; United Business Com. v. City of San Diego, supra, 91 Cal.App.3d 156, 165-169; 70 Ops.Cal.Atty.Gen. 153, 155-156 (1987)), the determination of whether a particular charge is limited to the reimbursement of costs incurred would depend upon the facts of each case. Normally courts have looked to the language of the ordinance imposing the fee and to cost analysis reports and studies prepared by government officials in concluding that a particular fee is for cost

reimbursement or revenue raising purposes. (See United Business Com. v. City of San Diego, supra, 91 Cal.App.3d 156, 165-168; Oakland Raiders v. City of Berkeley (1976) 65 Cal.App.3d 623, 627; Watson v. County of Merced (1969) 274 Cal.App.2d 263, 268; Arnke v. City of Berkeley (1960) 185 Cal.App.2d 842, 847.)

With respect to revenues received pursuant to a contract for services, the existence of the contract would not itself preclude the charges from being "levied" (set and collected) for purposes of section 56842. While the contract could conceivably produce "excess revenue" over the costs of the services provided, we note that certain statutory restrictions may be applicable to prevent such a consequence. Section 51350, for example, states in part:

"A county which provides services through its appropriate departments, boards, commissions, officers or employees, to any city pursuant to contract or as authorized by law, shall charge the city all those costs which are incurred in providing the services so contracted or authorized. A county shall not charge a city contracting for a particular service, either as a direct or an indirect overhead charge, any portion of those costs which are attributable to services made available to all portions of the county, as determined by resolution of the board of supervisors, or which are general overhead costs of operation of the county government. General overhead costs, for the purpose of this section, are those costs which a county would incur regardless of whether or not it provided a service under contract to a city."

The same considerations in determining the costs incurred would thus be applicable for contract services as for license and permit programs.

Our conclusion that license, permit, and contract service charges are excludable from the section 56842 calculations helps facilitate an equitable transfer of property tax revenues. An affected agency that is able to offset its costs of issuing licenses and permits and furnishing contract services does not need property tax revenues to fund such activities. By following the same practices, the new city would not need property tax revenues for performing these activities. Hence, neither local government would have claim to include these funds in the section 56842 calculations. To the extent that the charges exceed the reasonable costs of the governmental activities that produce them, they would properly be included in "the total amount of revenue from all sources, available for general purposes." Such circumstances would mean that a lesser amount of property taxes would be transferred to the new city--the affected agency would retain a greater share of the property taxes (having lost a possible source of generating excess revenues) and the city would obtain a lesser share of them (having gained a possible source of generating excess revenues).

In answer to the second part of the question, therefore, we conclude that in calculating the allocation of property tax revenues when a city incorporates but does not assume all service responsibilities for its territory, the calculations do not include funds derived from charges for licenses, permits, and such services as law enforcement services furnished under contract to other governmental agencies where the charges are levied to specifically offset the cost of the particular services and do not exceed the cost reasonably borne in providing the services.

* * * * *