Filed 6/20/18 (unmodified opn. attached)

CERTIFIED FOR PUBLICATION

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| YVONNE REID et al., | D072493 |
| Plaintiffs and Appellants, | |
| v. | (Super. Ct. No. 37-2016-00041207-CU-MC-CTL) |
| CITY OF SAN DIEGO et al., | ORDER MODIFYING OPINION AND DENYING REHEARING |
| Defendants and Respondents. | NO CHANGE IN JUDGMENT |

THE COURT:

1. On page 13, delete the first full paragraph and replace it with the following, this includes a new footnote 5 at the bottom of the fourth full paragraph which will also require the renumbering of footnotes 5 through 14 in the original opinion:

> Moreover, Plaintiffs are also incorrect in asserting that such challenges would be time-barred before the cause of action accrued. The November 27, 2012 City Council resolution provides that the assessments "are hereby levied"—i.e., they were levied on November 27, 2012. Municipal Code section 61.2517 contains express language stating when the statute of limitations begins, identifying it as the date the assessment is levied. Its express language is controlling as to the accrual of a cause of action challenging the assessment. (*Barratt American, Inc. v. City of San Diego* (2004) 117 Cal.App.4th 809, 820 (*Barratt American*) [applying similarly worded statute of limitations as to public improvement assessments under Code Civ. Proc., § 329.5]; *Fahey v.*

*City Council* (1962) 208 Cal.App.2d 667, 677 [assessment is levied when it is adopted by city council and statute of limitations begins then, not when city tax collector records the assessment or when it becomes a lien].)

The City's November 27, 2012 resolution levying the assessments also provides that hotel operators were not obligated to make such payments until January 2013. Citing *Water Replenishment Dist. of Southern California v. City of Cerritos* (2013) 220 Cal.App.4th 1450 and *McKesson, supra,* 496 U.S. 18, Plaintiffs contend that if Municipal Code section 61.2517 is applied, they will be deprived of a postpayment remedy in violation of their due process rights. Specifically, Plaintiffs assert that by the time challengers were first entitled to bring an action under the "pay first, litigate later rule" in January 2013, the action would already be time-barred under the 30-day statute of limitations, which expires in December 2012. Plaintiffs argue that a person challenging the assessment is, therefore, deprived of the right to contest the imposition of the assessment before the assessment is even paid.

To begin, this argument is forfeited because Plaintiffs failed to raise or develop it in the trial court. (*Mattco Forge, Inc. v. Arthur Young & Co.* (1997) 52 Cal.App.4th 820, 847.) Moreover, even if not forfeited, the argument fails because the "pay first, litigate later" rule does not apply where, as here, the City has specifically provided a prepayment remedy.

The " ' "pay first, litigate later" ' " rule is intended to protect the stability of public funding by requiring litigants to pay a tax before filing an action to challenge its collection. (*California Logistics, Inc. v. State of California* (2008) 161 Cal.App.4th 242, 247.) The rule ensures that essential public services are not disrupted during the tax challenge. (*Andal v. City of Stockton* (2006) 137 Cal.App.4th 86, 90.) When this rule applies, to satisfy due process, the taxpayer must be provided with meaningful backward looking relief and a " 'clear and certain' " postpayment remedy. (*McKesson*, *supra*, 496 U.S. at p. 39.)[5]

---

[5]    For example, article XIII, section 32 of the California Constitution provides: "No legal or equitable process shall issue in any proceeding in any court against this State or any officer thereof to prevent or enjoin the collection of any tax. After payment of a tax claimed to be illegal, an action may be maintained to recover the tax paid, with interest,

However, as long as the City provides a clear and certain remedy, it may determine to provide predeprivation process instead of postdeprivation relief. (See *National Private Truck Council, Inc. v. Oklahoma Tax Com'n* (1995) 515 U.S. 582, 587 [state government is afforded "great flexibility" in satisfying the requirements of due process in the field of taxation].) Where, as here, the City in Municipal Code section 61.2517 has provided a "form of 'predeprivation process,' " under which a person seeking to invalidate the assessment may sue prior to its payment, then no postpayment remedy is required. (*McKesson, supra,* 496 U.S. at pp. 36, 37.) Thus, the rule is not the one Plaintiffs assert, i.e., that the City *must* provide a postpayment remedy; it is rather that the City must provide a clear and certain remedy and if there is no prepayment remedy, then there must be a meaningful postpayment remedy. (*Id.* at p. 37.)

Here, the City determined that a prepayment remedy was more appropriate for actions challenging the TMD assessments; accordingly, it enacted Municipal Code section 61.2517, which requires that any action challenging the assessment be brought within 30 days after the assessment was levied. As such, the City provided a full and proper remedy to challenge the assessment, evidenced by the undisputed fact that SDOG filed its action against the City challenging the levying of such assessment on December 19, 2012—well within the 30-day limitation period in Municipal Code section 61.2517.

2. On page 17, the second full paragraph of the original opinion, delete the case cite *Howard Jarvis Taxpayers Assn. v. City of La Habra* (2001) 25 Cal.4th 809, 812 (*Howard Jarvis*) and replace with the following:

*Howard Jarvis, supra*, 25 Cal.4th at p. 812.

---

in such manner as may be provided by the Legislature." In *Howard Jarvis Taxpayers Assn. v. City of La Habra* (2001) 25 Cal.4th 809 (*Howard Jarvis*), the court noted that this constitutional provision applies to tax actions against the State of California and its officers, and does not apply to an action against local government. (*Id*. at p. 822, fn. 5.)

3

3.  On page 17, the fourth line from the bottom of the original opinion, delete the case cite *Barratt American, Inc. v. City of San Diego* (2004) 117 Cal.App.4th 809, 819-820 (*Barratt American*) and replace with the following:

> *Barratt American, supra*, 117 Cal.App.4th at pp. 819-820.

The petition for rehearing is denied.

There is no change in the judgment.

HUFFMAN, Acting P. J.

Copies to:  All parties

4

Filed 5/25/18 (unmodified version)

CERTIFIED FOR PUBLICATION

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| YVONNE REID et al., | D072493 |
| Plaintiffs and Appellants, | |
| v. | (Super. Ct. No. 37-2016-00041207-CU-MC-CTL) |
| CITY OF SAN DIEGO et al., | |
| Defendants and Respondents. | |

APPEAL from a judgment of the Superior Court of San Diego County, Richard E. L. Strauss, Judge.  Affirmed.

Law Offices of Ronald A. Marron, Ronald A. Marron and Michael T. Houchin for Plaintiffs and Appellants.

Mara W. Elliott, City Attorney, and Carmen A. Brock, Deputy City Attorney, for Defendant and Respondent City of San Diego.

Colantuono, Highsmith & Whatley, Michael G. Colantuono and Ryan Thomas Dunn for Defendant and Respondent San Diego Tourism Marketing District Corporation.

Yvonne Reid and Serena Wong (collectively Plaintiffs) sued the City of San Diego (City) and the San Diego Tourism Marketing District (TMD) (together, Defendants) in a

putative class action complaint, challenging what they allege is "an illegal hotel tax." The trial court sustained Defendants' demurrer without leave to amend on statute of limitations and other grounds. We affirm, concluding some of the causes of action are time-barred and the remainder fail to state facts constituting a cause of action.

## I. FACTUAL AND PROCEDURAL BACKGROUND[1]

### A. *Legal Background—The Procedural Ordinance and 2008 Assessment*

Under the Property and Business Improvement District Law of 1994 (PBID of 1994) (Sts. & Hy. Code,[2] §§ 36600 et seq.), private property owners in a geographical area can initiate formation of a business improvement district to assess themselves fees to be spent promoting their businesses. (See *Epstein v. Hollywood Entertainment Dist. II Bus. Improvement Dist.* (2001) 87 Cal.App.4th 862, 865.)

In 2007 the City enacted the Tourism Marketing District Procedural Ordinance, San Diego Municipal Code (Municipal Code) section 61.2501 et seq. (Procedural Ordinance). The Procedural Ordinance, an exercise of the City's charter-city authority to establish legislative authority for assessments, is modeled after the PBID of 1994.

The Procedural Ordinance authorized the TMD to be established for five years "to retain and expand the lodging industry which is one of the top revenue generators for the San Diego economy and a key employment sector." The TMD is managed by the San

---

[1] Because this appeal follows a successful demurrer, the facts are derived from those properly alleged in Reid's operative complaint. (See *Gu v. BMW of North America, LLC* (2005) 132 Cal.App.4th 195, 200.)

[2] Undesignated statutory references are to the Streets and Highways Code.

2

Diego Tourism Marketing District Corporation (TMD Corporation). The guiding document for the TMD is the San Diego Tourism Marketing District Management Plan (TMD Plan).

To fund "coordinated joint marketing" and "promotional activities for tourism development," the Procedural Ordinance authorized "the levy of assessments upon the businesses to which the special and specific benefit from those activities is conferred." (Mun. Code, § 61.2501, subds. (a) & (b), italics omitted.)

Under the Procedural Ordinance, in December 2007, the San Diego City Council (City Council) passed a five-year resolution levying assessments at the rate of 2 percent of gross room revenue from transient stays for lodging businesses operating in the City with 70 or more sleeping rooms.

With the City's knowledge and approval, virtually all hotels in the City pass the TMD assessment onto their guests. The City oversees collecting the TMD assessment and ensures the funds are spent consistent with the TMD Plan. During fiscal year 2010, more than $22 million in assessments was collected and disbursed to the San Diego Convention & Visitors Bureau and other organizations promoting San Diego tourism and "hotel room night consumption."

B. *Proposition 26*

In November 2010 California voters approved Proposition 26. Proposition 26 sought to tighten existing restrictions on local revenue-generating measures by defining "tax" broadly to mean "any levy, charge, or exaction of any kind imposed by a local government" that did not fall within one of seven enumerated exceptions. It also required

3

the electorate to approve laws increasing taxes, and shifted to the government the burden of demonstrating that any charge, levy, or assessment is not a tax. (Cal. Const., art. XIII C, § 1, subd. (e); see *Schmeer v. County of Los Angeles* (2013) 213 Cal.App.4th 1310, 1322.)

C. *2012 Renewal Assessment*

In 2012 San Diego hotel operators petitioned the City to renew the TMD for another 39.5 years. On November 26, 2012, the City Council adopted a resolution (R-307843) approving a renewed TMD Plan and levied assessments for 39.5 years (the renewal assessment). Under the renewal assessment, the City assessed *all* hotels in the district, not just those with 70 or more rooms.

D. *The SDOG Lawsuit*

On December 19, 2012, San Diegans for Open Government (SDOG) filed an action challenging the renewal assessment as being an unconstitutional tax in violation of Proposition 26, *San Diegans for Open Government v. City of San Diego* (Super. Ct. San Diego County, 2017, No. 37-2012-00088065-CU-MC-CTL) (the SDOG litigation). SDOG alleged it is a "non-profit taxpayer and voter organization" and asserted that one of its members owned a single unit subject to the renewal assessment.

Defendants contend the judgment in the SDOG litigation bars Plaintiffs' action here under claim preclusion (res judicata) principles. To place those arguments in context, we briefly describe the SDOG litigation.

The SDOG lawsuit named as defendants "City of San Diego; and all persons interested in the matter of the renewal of the [TMD], the levying of assessments upon the

4

assessed businesses for a period of thirty-nine and one-half years, and the prescribing of a method for collection of assessments."  Subsequently, the TMD Corporation also appeared as a defendant.

In the operative complaint, SDOG alleged it brought the action "under Code of Civil Procedure [s]ections 860 et seq. and 1060 et seq., Streets and Highways Code [s]ection 36633, and San Diego Municipal Code [s]ection 61.2526, among other laws and as appropriate."[3]  After SDOG voluntarily dismissed one cause of action and another was summarily adjudicated in the City's favor, by 2016 "'[t]he gravamen of SDOG's claim [was] that the TMD assessment is an illegal tax that was euphemistically labeled an "assessment" to get around the voter-approval requirements'" in Proposition 26.

E.  *August 2016 Amendment*

In August 2016, while the SDOG litigation was pending, the City Council adopted a resolution (R-310664) eliminating hotels with fewer than 70 rooms from the TMD assessment (the 2016 amendment).  The City believed the 2016 amendment was more compliant with Proposition 26 because "[a]rguably, only the larger hotels receive a direct benefit from the marketing expenditures such that only the larger hotel operations should be assessed."

---

[3]     Code of Civil Procedure section 860 et seq. pertains to validation proceedings, and section 1060 of that Code governs declaratory relief.  Streets and Highways Code section 36633 contains a 30-day limitation period for actions challenging the validity of an assessment under the PBID of 1994.

5

F. *Judgment in the SDOG Litigation*

After the 2016 amendment, the defendants in the SDOG litigation moved for judgment on the pleadings, asserting (1) SDOG lost standing because it claimed only one owner of one rental property as a member, which was no longer subject to the assessment; and (2) the action was moot because the 2012 renewal assessment was superseded by the 2016 amendment.

On September 30, 2016, the trial court entered judgment for the defendants in the SDOG litigation, ruling the action was "moot."

G. *Reid's Action*

Approximately two months after the SDOG judgment, Reid filed the instant action. The following month, Plaintiffs filed a first amended complaint (complaint) "individually and on behalf of all others similarly situated and the general public." The class period is January 1, 2013 to August 31, 2016. Unlike the SDOG litigation, Plaintiffs are alleged to be hotel *guests* who paid the assessment as part of their hotel bill.

The gravamen of Plaintiffs' claim is that the 2012 renewal assessment is a disguised tax that violates Proposition 26 because it was never submitted to the electorate for a vote. Plaintiffs allege that the City "uses the [TMD] as a ruse to raise revenue for the general fund without having to seek voter approval to impose a new tax." Plaintiffs allege that Reid was charged TMD assessments for hotel stays in December 2015 and March 2016, and Wong was charged such assessments in December 2013, September 2014, and "on other occasions during the [c]lass [p]eriod." The complaint alleges that Plaintiffs and the class members "paid this illegal 'hidden hotel tax' that Defendants have

6

disguised as a Tourism Marketing District Assessment" by staying at one or more of the assessed hotels during the period between January 1, 2013 and August 31, 2016. The complaint alleges the TMD assessment is "really a 'tax'" within the meaning of article XIII C, section 1, subdivision (e) of the California Constitution and, because the TMD was formed without voter approval as required by law, the City's imposition of the TMD assessment is unlawful. The complaint challenges "the legality of the TMD Procedural Ordinance" and seeks a declaration of the parties' rights "with respect to the TMD Operating Agreement dated November 26, 2012" [TMD Agreement] and the "TMD Management Plan dated September 11, 2012 [TMD Plan]."

The complaint contains five causes of action: (1) declaratory relief that the TMD Plan and TMD Agreement are invalid because the City lacked the legal capacity to authorize the levy of the TMD assessment without first obtaining voter approval as required by Proposition 26; (2) declaratory relief challenging the TMD Procedural Ordinance as unconstitutional because it "has imposed an illegal tax"; (3) declaratory relief challenging the TMD Procedural Ordinance as unconstitutional because it denies equal protection by making classifications between business owners with respect to the fundamental right to vote; (4) waste of taxpayer funds; and (5) a petition for a writ of mandate seeking a constructive trust and restitution of "the amounts in which the [City] has been unjustly enriched through its unlawful imposition of the TMD Assessment."

H. *Demurrer*

Defendants demurred to the complaint, asserting the first (declaratory relief Proposition 26 violation), fourth (taxpayer waste), and fifth causes of action (writ of

7

mandate) were barred by (1) the res judicata effect of the judgment of dismissal in the SDOG litigation and (2) either the 30-day statute of limitations in Municipal Code sections 61.2517 and 62.2526, subdivision (b) or the 60-day period for bringing a reverse validation proceeding under Municipal Code section 61.2526, subdivision (a) and Code of Civil Procedure section 860 et seq. Defendants also asserted that the first cause of action was moot because the 2012 renewal assessment had been superseded by the August 2016 amendment.

Defendants demurred to the second cause of action (Procedural Ordinance is an unconstitutional tax) on the grounds that the ordinance does not itself impose anything, but "merely creates the framework for the City Council to later do so."

Defendants demurred to the third cause of action (equal protection) on the grounds a public entity may properly allow only those who pay a levy to vote on its approval. Defendants also asserted that Plaintiffs lacked standing to challenge the 2012 renewal assessment because only owners or operators of hotels pay the assessment to the City, and thus only they (and not hotel guests) have standing.[4]

Opposing the demurrer, Plaintiffs asserted the SDOG judgment had no preclusive effects because that action was not a reverse validation action and, in any event, judgment was not entered on the merits. Plaintiffs also asserted the "primary relief" sought is

---

[4] Concurrently with their demurrer, Defendants filed a motion for sanctions against Plaintiffs and their attorneys under Code of Civil Procedure section 128.7, asserting the complaint is frivolous because the judgment in the SDOG litigation was "in rem" and binding, and also because the complaint is time-barred. Although the trial court sustained the demurrer, it denied the sanctions motion.

"equitable in nature" and, therefore, "the statute of limitations set forth in the validation statutes and the [Procedural Ordinance] simply do not apply." Plaintiffs argued the validation statutes do not apply because "this action does not involve the issuance of bonds." Alternatively, plaintiffs asserted that any limitation period was equitably tolled during the pendency of the SDOG lawsuit. Plaintiffs asserted they had standing because the assessed hotel owners and operators "simply collect a tax that is imposed upon their hotel guests." Plaintiffs asked for leave to amend if the court was inclined to sustain the demurrer, but did not specify what additional facts might be alleged.

The court sustained the demurrer to the first, fourth, and fifth causes of action "on the grounds the claims are barred by the [60-day] statute of limitations" in Municipal Code section 61.2526, subdivision (a) and Code of Civil Procedure section 860 [validation statutes]. The court also held such claims were precluded by the SDOG judgment. The court sustained the demurrer to the second cause of action on the grounds the Procedural Ordinance does not impose or assess tax. Citing *Salyer Land Co. v. Tulare Lake Basin Water Storage Dist.* (1973) 410 U.S. 719 (*Salyer*), the court sustained the demurrer to the third cause of action (equal protection) on the grounds a public entity may limit approval of an assessment to those entities that pay it. Plaintiffs timely appealed from the judgment of dismissal.

DISCUSSION

## II. *THE COURT CORRECTLY SUSTAINED THE DEMURRER*

### A. *The Standard of Review*

"The standards for reviewing a judgment of dismissal following the sustaining of a demurrer without leave to amend are well settled. '"We treat the demurrer as admitting all material facts properly pleaded, but not contentions, deductions or conclusions of fact or law. [Citation.] We also consider matters which may be judicially noticed.' [Citation.] Further, we give the [complaint] a reasonable interpretation, reading it as a whole and its parts in their context. [Citation.] When a demurrer is sustained, we determine whether the [complaint] states facts sufficient to constitute a cause of action. [Citation.] And when it is sustained without leave to amend, we decide whether there is a reasonable possibility that the defect can be cured by amendment: if it can be, the trial court has abused its discretion and we reverse; if not, there has been no abuse of discretion and we affirm. [Citations.] The burden of proving such reasonable possibility is squarely on the plaintiff."'" (*Finch Aerospace Corp. v. City of San Diego* (2017) 8 Cal.App.5th 1248, 1251-1252.)

We will affirm "'if proper on any grounds stated in the demurrer, whether or not the trial court acted on that ground.'" (*Melton v. Boustred* (2010) 183 Cal.App.4th 521, 528.) "Thus, 'we do not review the validity of the trial court's reasoning but only the propriety of the ruling itself.'" (*Popescu v. Apple, Inc.* (2016) 1 Cal.App.5th 39, 50.)

B. *The First, Fourth, and Fifth Causes of Action Are Barred by the 30-Day Statute of Limitations*

1. *The 30-day limitation period in Municipal Code section 61.2517*

The Procedural Ordinance contains two separate 30-day statutes of limitations for actions contesting assessments and related actions.

Municipal Code section 61.2517 provides in part: "The validity of an assessment levied . . . shall not be contested in any action or proceeding unless the action or proceeding is commenced within 30 days after the resolution establishing the district and levying the assessment is adopted." (Italics omitted.)

Municipal Code section 61.2526 provides a 30-day limitation period for actions challenging assessments as well as other related challenges by providing in part: "An action to determine the validity of assessments, contracts, improvements, or activities, or the amendment or approval of a district management plan, including but not limited to an amendment that changes, clarifies, or disestablishes a benefit zone or category of businesses" (*id.*, subd. (a), italics omitted) must be brought within "30 days after the matter is deemed to be in existence" (*id.*, subd. (b)), which is defined as "upon its authorization by the City Council" (*id.*, subd. (a)).

Defendants demurred to the first (illegal tax in violation of Proposition 26), fourth (taxpayer waste claim), and fifth (writ of mandate) causes of action, asserting these claims were time-barred under these 30-day limitation periods.

Plaintiffs concede the City Council renewed the TMD and levied the renewal assessment by resolution on November 27, 2012. Thus, Plaintiffs' lawsuit, filed nearly

11

*four years later*, is clearly time-barred unless the 30-day limitation period is unlawful, some tolling principle applies, or laches applies in lieu of the 30-day statute of limitations.

   2. *No due process violation*

   Citing *McKesson Corp. v. Div. of Alcoholic Bevs. & Tobacco* (1990) 496 U.S. 18, Plaintiffs contend the due process clause of the Fourteenth Amendment to the United States Constitution obligates the taxing authority to provide "'meaningful backward-looking relief'" to rectify "'any unconstitutional deprivation'" and the taxpayer must be provided a "'clear and certain remedy.'" Plaintiffs assert the 30-day statute of limitations denies "'meaningful backward-looking relief'" because the City Council's resolution provided the renewal assessment would not take effect until January 1, 2013, and thus the last day to challenge the assessment would have been December 27, 2012, "before the tax even took effect." Plaintiffs assert that, as a result, "no taxpayer" would ever be able to timely challenge the alleged unconstitutional tax.

   A limitation period is consistent with due process if it provides a reasonable time to bring the action. (*Kupka v. Board of Administration* (1981) 122 Cal.App.3d 791, 797.) Here, it is unnecessary to speculate whether a taxpayer *could* timely challenge the renewal assessment within the 30-day limitation period—because it is a demonstrable reality that SDOG did exactly that. On December 19, 2012—i.e., within the 30-day limitation period—SDOG filed its lawsuit challenging the November 27, 2012 City Council resolution as imposing an unconstitutional tax.

12

Moreover, Plaintiffs are also incorrect in asserting that such challenges would be time-barred before the cause of action accrued. The November 27, 2012 City Council resolution provides that the assessments "are hereby levied"—i.e., they were levied on November 27, 2012. Thus, contrary to Plaintiffs' contention, the resolution does not delay the effective date to a point beyond the 30-day limitation period.

Citing *Sipple v. City of Hayward* (2014) 225 Cal.App.4th 349 (*Sipple*), *Tracfone Wireless, Inc. v. County of Los Angeles* (2008) 163 Cal.App.4th 1359 (*Tracfone*), *Decorative Carpets, Inc. v. State Bd. of Equalization* (1962) 58 Cal.2d 252 (*Decorative Carpets*), *Delta Air Lines, Inc. v. State Board of Equalization* (1989) 214 Cal.App.3d 518 (*Delta Air*), and *Scol Corp. v. City of Los Angeles* (1970) 12 Cal.App.3d 805 (*Scol Corp.*), Plaintiffs contend "California courts have also repeatedly held that taxpayers must be entitled to some form or [*sic*] relief to prevent the unjust enrichment of the taxing authority" and that a 30-day statute of limitations is too short to be consistent with these cases.

However, these cases do not support Plaintiffs' assertion. The primary issue in *Sipple*, *supra*, 225 Cal.App.4th 349 was whether an internet service provider had standing to sue for a tax refund where its customers had paid the tax. (*Id.* at p. 358.) *Tracfone*, *supra*, 163 Cal.App.4th 1359 is not helpful for the same reason; it too involved standing, not the statute of limitations. (*Id.* at p. 1361.)

*Decorative Carpets*, *supra*, 58 Cal.2d 252 is also off point. There, a carpet retailer sought a refund of sales tax. The retailer intended to keep the refund and not return it to its customers, even though the retailer had charged them a sales tax reimbursement. (*Id.*

13

at pp. 253-254.)  The California Supreme Court held that the taxing authority could "insist as a condition of refunding overpayments to [the retailer] that [the retailer] discharge its trust obligations to its customers" by refunding to them the sales tax reimbursement they had paid.  (*Id.* at p. 255.)

*Delta Air*, *supra*, 214 Cal.App.3d 518 is similarly inapposite.  There, the airline brought an action to recover sales and use taxes.  (*Id.* at p. 520.)  The case has no statute of limitations issue.  Nor does *Scol Corp.*, *supra*, 12 Cal.App.3d 805, which is a standing case.

Plaintiffs cite no case holding or suggesting that the 30-day limitation period in Municipal Code section 61.2517 is unlawful.  Indeed, the 30-day limitation period provided in that ordinance is nearly verbatim of the 30-day statute of limitations in section 36633 in the PBID of 1994, upon which the Procedural Ordinance is modeled:

| Municipal Code section 61.2517 | Section 36633, PBID of 1994 |
|---|---|
| "The validity of an assessment levied under this Division shall not be contested in any action or proceeding unless the action or proceeding is commenced within 30 days after the resolution establishing the district and levying the assessment is adopted . . . ."  (Italics omitted.) | "The validity of an assessment levied under this part shall not be contested in any action or proceeding unless the action or proceeding is commenced within 30 days after the resolution levying the assessment is adopted . . . ." |

"What constitutes a reasonable time [to bring suit] is a question ordinarily left to the Legislature, whose decision a court will not overrule except where palpable error has been committed."  (*Friedland v. City of Long Beach* (1998) 62 Cal.App.4th 835, 846.)  Here, the 30-day limit to commence an action challenging the renewal assessment is

14

reasonable given the City's interest in promptly resolving any questions about the validity of the assessment and implementing the TMD's goals. (See *The Inland Oversight Committee v. City of Ontario* (2015) 240 Cal.App.4th 1140 [applying 30-day limit to appeal in section 36633].)

Indeed, California law provides numerous 30-day statutes of limitations. (See 3 Witkin, Cal. Procedure (5th ed. 2008) Actions, § 475, pp. 606-607 [listing several 30-day statutes of limitations]; see also Bus. & Prof. Code, § 19463 [30 days to contest action suspending or revoking a license (horse racing)]; Gov. Code, § 11523 [30 days to challenge certain administrative decisions of the Fair Employment and Housing Commission]; Pub. Resources Code, § 21167, subd. (b) & (c) [30 days to contest certain governmental action under the California Environmental Quality Act]; Sts. & Hy. Code, § 10400 [30 days to challenge an assessment levied under the Municipal Improvement Act of 1913]; Rev. & Tax Code, § 4808 [30 days to challenge alleged illegal or unconstitutional property tax assessment].)

3. *No basis for equitable tolling*

Plaintiffs contend that if a 30-day statute of limitations applies, the court erred in failing to equitably toll the limitation period. Citing *McDonald v. Antelope Valley Community College Dist.* (2008) 45 Cal.4th 88 (*McDonald*), Plaintiffs assert that when "'"an injured person has several legal remedies and, reasonably and in good faith, pursues one,"'" the limitation period is tolled because the defendant has timely received notice of the first of two proceedings. Plaintiffs' theory is that the SDOG litigation, which also challenged the renewal assessment, was timely filed and "Defendants were therefore put

15

on timely notice of the first of two lawsuits."  Plaintiffs contend that because the SDOG litigation was dismissed as moot, Defendants "will not be unfairly prejudiced if this action is allowed to proceed."

Equitable tolling of the statute of limitations has been recognized in California only where (1) the plaintiff is pursuing an alternative remedy in another forum; (2) under narrow circumstances, while plaintiff is pursuing the same remedy in the same forum; (3) where a defendant fraudulently conceals the cause of action; and (4) in certain actions against an insurer.  (Banke & Segal, Cal. Practice Guide:  Civil Procedure Before Trial, Statutes of Limitations (The Rutter Group 2018) § 6:5, p. 6-1.)

In this case, there is no basis for equitable tolling because the plaintiff in the SDOG litigation and the Plaintiffs here are different.  Plaintiffs cite no authority, and we are aware of none, that would allow a plaintiff in one case to equitably toll the limitation period based on the filing of a stranger's lawsuit.

In each of the cases cited by Plaintiffs in support of equitable tolling, the plaintiff asserting equitable tolling was also plaintiff in the prior proceeding.  (*McDonald*, *supra*, 45 Cal.4th 88 [time to file administrative claim by Sylvia Brown equitably tolled by her pursuit of an internal grievance procedure]; *Collier v. City of Pasadena* (1983) 142 Cal.App.3d 917 [filing of workers' compensation claim by Collier equitably tolled the limitation period for his filing a pension claim arising out of the same injury]; *Elkins v. Derby* (1974) 12 Cal.3d 410 [filing of worker's compensation claim by Elkins (where it was determined he was not an employee) tolls the limitation period on his subsequent personal injury action against the same defendant for the same alleged injury].)

16

The rule Plaintiffs propose would result in potentially unlimited liability as one plaintiff would attempt to toll based on other plaintiffs' lawsuits against the same defendant. The doctrine of equitable tolling has been applied only in few "carefully considered situations." (*Lantzy v. Centex Homes* (2003) 31 Cal.4th 363, 370.) Equitable tolling under the circumstances Plaintiffs propose here is not one such situation.

4. *No basis for continuous accrual*

Citing *Howard Jarvis Taxpayers Assn. v. City of La Habra* (2001) 25 Cal.4th 809, 812 (*Howard Jarvis*), Plaintiffs contend the continued imposition and collection of tax is an "ongoing violation, upon which the limitations period begins anew with each collection." Under this theory, Plaintiffs' complaint would at least be viable as to assessments in the last 30 days before they filed suit.

However, the court in *Howard Jarvis*, *supra*, 25 Cal.4th 809 limited its holding to cases "where the three-year limitations period for actions on a liability created by statute (Code Civ. Proc., § 338, subd. (a)) applies, *and no other statute . . . provides differently*." (*Howard Jarvis*, *supra*, 25 Cal.4th at p. 825, italics added.) In *Utility Cost Management v. Indian Wells Valley Water Dist.* (2001) 26 Cal.4th 1185, 1195, the California Supreme court held that if another statute provides a limitation period triggered by a specified event, the continuous accrual theory does not apply. This court reached the same conclusion in *Barratt American, Inc. v. City of San Diego* (2004) 117 Cal.App.4th 809, 819-820 (*Barratt American*), holding the continuous accrual doctrine did not apply where the applicable statute of limitations states the limitation period began on the date the assessment is levied. Like the statute of limitations at issue in *Barratt American* (Code

17

Civ. Proc., § 329.5), here Municipal Code section 61.2517 expressly provides that an action challenging the validity of an assessment must be commenced within 30 days "after the resolution establishing the district and levying the assessment is adopted . . . ." The continuous accrual theory does not apply because it would impermissibly read the date-of-levy requirement out of the applicable limitation period. (*Barratt American*, *supra*, 117 Cal.App.4th at p. 820.)

5. *No basis for applying laches in lieu of the statute of limitations*

Asserting they primarily seek "equitable" relief (declaratory judgment and restitution), Plaintiffs contend the court should not have applied the 30-day statute of limitations, but instead should have applied the equitable doctrine of laches. However, "[a]lthough declaratory relief is an equitable proceeding, whether laches is available in a declaratory relief proceeding depends on the nature of the underlying claim." (*Wells Fargo Bank v. Bank of America* (1995) 32 Cal.App.4th 424, 439.) Accordingly, laches does not apply as a defense to causes of action seeking money judgments, even where joined with claims in equity. (*Ibid.*) Here, Plaintiffs' underlying claim is the City imposed an unlawful tax that raises approximately $25 million annually. Plaintiffs seek a legal remedy—"monies paid by Plaintiffs and the Class members for the TMD Assessment as transient occupants."

Moreover, although Plaintiffs seek imposition of a constructive trust, a constructive trust is merely a remedy, "and an action seeking to establish a constructive trust is subject to the limitation period of the underlying substantive right. If that substantive right is barred by the statute of limitations, the remedy necessarily fails."

18

(*Embarcadero Mun. Improvement Dist. v. County of Santa Barbara* (2001) 88 Cal.App.4th 781, 793.) Additionally, although Plaintiffs seek "restitution," restitution is a remedy and not a freestanding cause of action. (*McBride v. Boughton* (2004) 123 Cal.App.4th 379, 387.) Accordingly, the court correctly declined to apply laches.[5]

C. *The Third Cause of Action—Equal Protection*

Under the Procedural Ordinance, only "business owners" may vote in petitioning the City Council to levy the assessment.[6] Plaintiffs' third cause of action alleges the Procedural Ordinance violates equal protection because it does not grant the right to vote on the assessment to the "'electorate,' which includes non-business owners like Plaintiff Wong."

Defendants did not demur to this cause of action on statute of limitations grounds.[7] Instead, citing *Salyer*, *supra*, 410 U.S. 719 and *Southern Cal. Rapid Transit Dist. v. Bolen* (1992) 1 Cal.4th 654 (*Bolen*), Defendants contend there is no equal

---

[5]  Because these causes of action are time-barred, it is unnecessary to address and we express no opinion on Defendants' other asserted grounds for demurrer to these causes of action (lack of standing, 60-day validation statute of limitations, and the res judicata effect of the SDOG judgment).

[6]  The Procedural Ordinance defines business owners as "the owner, operator, or authorized representative of the business who is noted on City records as the responsible party for remitting and reporting the Transient Occupancy Tax pursuant to San Diego Municipal Code section 35.0114." (Mun. Code, § 61.2504.)

[7]  Accordingly, although "'a constitutional right is subject to reasonable statutory periods of limitation within which to commence an action for its vindication'" (*Sumner Hill Homeowners' Assn., Inc. v. Rio Mesa Holdings, LLC* (2012) 205 Cal.App.4th 999, 1024), we cannot affirm with respect to this cause of action on statute of limitations grounds. (See *Burke v. Maguire* (1908) 154 Cal. 456, 462.)

19

protection violation when a public entity allows only those who pay a levy to vote on approval of the assessment.

Generally, the right to vote is considered fundamental, preservative of other basic political rights, and any alleged restriction that impinges on it demands strict scrutiny. (*Reynolds v. Sims* (1964) 377 U.S. 533, 561-562 (*Reynolds*).) However, there are exceptions.

In *Salyer*, *supra*, 410 U.S. 719, the United States Supreme Court considered a specialized water district whose activities disproportionately affected the class favored to vote. The district was created for the purpose of acquiring, storing, and distributing water for farming. The statute confronted in *Salyer* confined the vote for directors of the water district to landowners and weighted their votes according to the assessed value of their land. This was a district with a "special limited purpose" (*id.* at p. 728) that did "not exercise what might be thought of as 'normal governmental' authority." (*Id.* at p. 729.) Moreover, the district's actions disproportionately affected landowners because all costs of district projects were assessed against land in proportion to the benefits received and all charges for services were collectible from those receiving the benefit in proportion to services rendered. (*Id.* at p. 729.) Employing minimal scrutiny, the *Salyer* court upheld the statute as rationally based and declined to apply the election requirements announced in *Reynolds*, *supra*, 377 U.S. 533. (*Salyer*, *supra*, 410 U.S. at p. 730.)

The United States Supreme Court reached an identical result in *Ball v. James* (1981) 451 U.S. 355 (*Ball*), ruling that *Reynolds*, *supra*, 377 U.S. 533 did not apply to an election for the directors of a water reclamation district in Arizona whose governing

20

board was elected by those owning land within the district, voting power being apportioned according to the number of acres owned. The district, which had constructed dams and other public works to generate hydroelectric power, was one of the largest public utilities in Arizona. Despite recognizing that these activities were "more diverse and affect[ed] far more people" (*id.* at p. 365) than those in *Salyer*, *supra*, 410 U.S. 719, the court held that "these distinctions do not amount to a constitutional difference" (*Ball,* at p. 366) because the district's powers did not run the gamut of those typical of a general government, and it served the relatively narrow mission of storing, conserving, and distributing water to its landowner members. (*Id.* at pp. 366-367.)

Against this background, in *Bolen, supra,* 1 Cal.4th 654, the California Supreme Court upheld statutes limiting the vote, in referenda on proposed metro rail beneficial assessment districts, to owners of commercial property who would be subject to the assessment. Analyzing *Salyer*, *supra*, 410 U.S. 719 and *Ball*, *supra*, 451 U.S. 355, the court in *Bolen* noted that the right to vote is "not fundamental" where "'a special-purpose unit of government [is] assigned the performance of functions affecting definable groups of constituents more than other[s].'" (*Bolen*, *supra*, 1 Cal.4th at p. 665.) "Where these two conditions jointly occur, . . . voting power 'may be apportioned in ways which give greater influence to the citizens most affected by the organization's functions' [citation] without violating the guarantee of equal protection provided that the resulting classification is reasonably related to the statutory objective." (*Ibid.*) Applying these principles, the *Bolen* court determined that the districts were special purpose entities lacking virtually any indicia of government. Next, the court concluded that the eligible

21

voters were disproportionately impacted by the election issue while the disenfranchised were not as substantially affected. With these two conditions established, the court held the referenda was constitutional under the rational basis test. (*Id.* at pp. 669-670, 675-676.)

Summarizing applicable law, in *Greene v. Marin County Flood Control & Water Conservation Dist.* (2010) 49 Cal.4th 277 the California Supreme Court stated, "It is . . . well established the . . . one-person, one-vote requirement rooted in the state and federal equal protection provisions do not apply to fee and assessment elections conducted by limited purpose government agencies that disproportionately affect certain property owners." (*Id.* at p. 297, fn. 8.)

Here, the TMD is not vested with, and does not exercise, general governmental powers. The district promotes tourism and seeks to "retain and expand the lodging industry." (Mun. Code, § 61.2501, subd. (a).) The TMD comprises an area within which certain lodging businesses pay assessments to fund business promotion activities. (Mun. Code, § 61.2504.) As such, it is legally indistinguishable from the benefit districts in *Bolen*, *supra*, 1 Cal.4th 654, which also "lack[ed] virtually any of the incidents of government." (*Id.* at p. 669.)

Regarding *Bolen's* second prong, the TMD assessment primarily affects the voters, the assessed hotels. The hotels alone bear the obligation to pay the assessment. (Mun. Code, § 2510, subd. (a)(8) ["[A]ny assessment imposed pursuant to this Division is levied solely upon the business owner within the district [who is] solely responsible for payment

22

of the assessment." (Italics omitted.)].) Accordingly, the equal protection analysis of the voting scheme is not subject to strict scrutiny review.

Disagreeing with this result, Plaintiffs primarily rely on *Hellebust v. Brownback* (10th Cir. 1994) 42 F.3d 1331 (*Hellebust*), which involved the constitutionality of electing members to the Kansas State Board of Agriculture (Board). There, delegates from agricultural organizations elected the Board's members. The plaintiffs asserted this violated the principle of one person, one vote because the Board exercises broad governmental authority. (*Id.* at p. 1332.) The federal district court held this voting system violated equal protection, and the court of appeals agreed.

However, "[c]entral" to the *Hellebust* court's holding was a finding that "the Board's reach far extends the fields of agriculture and agribusiness." (*Hellebust*, *supra*, 42 F.3d at p. 1332.) The Board's authority extended to any commercial pump used in Kansas, including gasoline pumps at filling stations. The Board also conducted all meat and dairy inspections, had authority to enter any business premises, conduct inspections, issue subpoenas, and otherwise enforce state regulations on dairy and meat products. (*Id.* at p. 1333.) The Board also regulated the use of pesticides, and controlled all water rights on both agricultural and nonagricultural lands. (*Ibid.*) The court found the Board "has broad regulatory powers which affect all residents of Kansas daily." (*Ibid.*)

Affirming the district court's judgment in *Hellebust*, the Tenth Circuit explained, "Once a state agency has the authority to affect every resident in matters arising in their daily lives, its powers are not disproportionate to those who vote for its officials. The quality of meat and dairy products consumed by everyone in the state; the accuracy of the

23

scales upon which people are charged for consumer goods; the right to divert and use water; the use of pesticides on residential lawns, city parks, and farmlands are not services disproportionate to those who attend the annual meeting of the Board. Those matters unremittingly influence every person within the State of Kansas. Moreover, as correctly determined by the district court, those matters fall within the state's police powers and comprise part of the normal functions of state government. Thus, although the Board exercises powers that uniquely benefit the agricultural industry, its core governmental powers deprive the Board of the umbra of *Ball*[, *supra*, 451 U.S. 355] and *Salyer*[, *supra*, 410 U.S. 719]." (*Hellebust*, *supra*, 42 F.3d at p. 1335.)

Here, Plaintiffs contend that "[s]imilar to the facts in *Hellebust*[, *supra*, 42 F.3d 1331], TMD claims to serve only a limited purpose" but instead has "broad regulatory powers that affect many residents of San Diego." As an example of such "broad regulatory powers," Plaintiffs allege the "stated goals of the TMD Corp." are to raise approximately $25 million of annual assessments which would alleviate the need for the City to fund such tourism promotional activities, resulting in a $10.5 million savings to the City's general fund. Plaintiffs assert that as a result, the District "exercises the sort of governmental powers that invoke the strict demands of *Reynolds*[, *supra*, 377 U.S. 533] because it can impose taxes (as it did here) and affect public safety, parks, and libraries."

However, *Hellebust*, *supra*, 42 F.3d 1331 is materially distinguishable. As explained in *Bolen*, *supra*, 1 Cal.4th 654, "as far as the governmental function analysis is concerned, the constitutionally decisive fact is that the voting scheme at issue reflects the 'narrow primary purpose for which the [public entity] is created.'" (*Id.* at p. 669.) Here,

24

that narrow purpose is set forth in the Procedural Ordinance and the City Council's resolution renewing and levying the TMD assessment. The Procedural Ordinance states the TMD is to "provide for tourism development . . . in order to retain and expand the lodging industry which is one of the top revenue generators for the San Diego economy and a key employment sector." (Mun. Code, § 61.2501, subd. (a).) The City Council's resolution levying the 2012 renewal assessment provides such revenues "shall not be used to provide activities that directly benefit businesses outside the district or for any purpose other than the purposes specified in this Resolution, the Resolution of Intention, and the District Plan." Accordingly, unlike the entity in *Hellebust*, here the TMD is not affecting the *daily activities* of everyone in the geographical area.

Second, even if the assessment will result in a $10.5 million savings to the City's general fund, that does not make the TMD a government provider of police, parks, libraries, or other public services. Plaintiffs cite nothing showing the TMD has authority to direct or control how the City spends its general fund revenue. Whatever incidental financial benefits the City may obtain from the TMD paying for tourism promotional activities that the City might otherwise fund, that does not transform the TMD into an entity with broad governmental powers. The TMD does not provide public services such as schools, transportation, utilities, roads, or anything else of the type ordinarily financed by a municipal entity. (See *Salyer*, *supra*, 410 U.S. at pp. 728-729.)

Plaintiffs also contend the TMD's activities do not primarily affect the assessed hotel owners because "'[v]irtually all hotels in the City of San Diego pass the TMD

25

Assessment onto their guests who actually bear the burden of paying for the Assessment'" and the City knew and approved of this practice.

However, in *Bolen*, *supra*, 1 Cal.4th 654, the California Supreme Court rejected a similar contention. There, only the affected business property owners were entitled to vote on assessments to finance a public transit project. (*Id.* at p. 660.) The California Supreme Court rejected the equal protection challenge, although some who were not permitted to vote would be affected "secondarily" because the added costs would be "'pass[ed] through'" to them and "consumers of goods and services" would also be affected "as the financial consequences of the assessment are presumably distributed throughout the region." (*Id.* at p. 674.)

For the first time in their reply brief, Plaintiffs cite *City of San Diego v. Shapiro* (2014) 228 Cal.App.4th 756 (*Shapiro*) to support their equal protection argument. However, in *Shapiro* this court expressly declined to reach the equal protection issue. (*Id.* at p. 780, fn. 23.) "'"[C]ases are not authority for propositions not considered."'" (*Ulloa v. McMillin Real Estate & Mortgage, Inc.* (2007) 149 Cal.App.4th 333, 340.)

Accordingly, the equal protection analysis in this case does not invoke strict scrutiny. (See *Bolen*, *supra*, 1 Cal.4th at p. 675.) Instead, the equal protection requirement is that the voting scheme "not be '"wholly irrelevant"' to the '"achievement of the [ordinance's] objectives."'" (*Ibid.*) Plaintiffs' opening brief only analyzes the issue under strict scrutiny and, therefore, Plaintiffs have forfeited the issue of whether the voting scheme violates equal protection under the applicable reasonable basis standard.

26

(See *Roehl v. Ritchie* (2007) 147 Cal.App.4th 338, 352 [failing to raise an issue in the opening brief waives the issue].)

D. *Second Cause of Action*

Plaintiffs' second cause of action seeks a declaratory judgment that the Procedural Ordinance is an unconstitutional tax because the City denied the electorate the right to vote on the TMD assessment and the Procedural Ordinance. Defendants successfully demurred to this cause of action on the grounds that the Procedural Ordinance itself does not impose any tax, but rather creates a framework under which the City may, by resolution, levy assessments.[8] Defendants state the City Council's 2012 *resolution* renewing the TMD and levying the assessment is what imposes the alleged "tax"—not the Procedural Ordinance that is the sole subject of the second cause of action.

The court properly sustained the demurrer to the second cause of action. Proposition 26 requires voter approval of "taxes" as it defines them and applies only to those taxes "imposed by a local government." (Cal. Const., art. XIII C, § 1, subd. (e); see *Shapiro*, *supra*, 228 Cal.App.4th at p. 767, fn. 6.) "Imposed" in this context means enacted. (*California Cannabis Coalition v. City of Upland* (2017) 3 Cal.5th 924, 944.)

Defendants correctly assert that the Procedural Ordinance does not enact or impose any assessment. It creates a framework and procedure for the City to subsequently define a district and levy assessments by resolution of the City Council. For example, Municipal Code section 61.2501, subdivision (e) provides that the

---

[8]     Defendants did not demur to this cause of action on statute of limitations grounds.

Procedural Ordinance's purpose is, among other things, "[t]o provide a mechanism with which a charge may be imposed for a special and specific benefit conferred directly to the payors." Municipal Code section 61.2509 provides that it is the City Council, by resolution, that will "adopt, revise, change, reduce, or modify" any "proposed assessment." (Italics omitted.) Plaintiffs cite nothing in the Procedural Ordinance that sets the rate or term of any assessment or identifies those who are assessed. Rather, the City Council did so by the resolution Plaintiffs untimely challenged.[9]

Disagreeing with this conclusion, Plaintiffs' cite Municipal Code section "35.102," which they contend shows the City Council's intent to impose a "tax" on hotel guests. However, as Defendants correctly note, there is no such ordinance.[10] If Plaintiffs intended to cite Municipal Code section 35.0102, that ordinance defines various terms in the City's Transient Occupancy Tax, which is not at issue in this case.[11]

Citing *Ponderosa Homes, Inc. v. City of San Ramon* (1994) 23 Cal.App.4th 1761 (*Ponderosa Homes*), Plaintiffs also contend to "impose" a tax means to "establish" and, therefore, the Procedural Ordinance imposes a tax by creating a mechanism by which the charge can be imposed. Plaintiffs conclude that the Procedural Ordinance created the tax

---

[9] Plaintiffs' reply brief asserts, "Defendants admit that the . . . Procedural Ordinance levies an assessment and therefore logically also imposes a 'tax.'" However, Defendants do not make any such admission.

[10] Although Defendants' brief called this mistake to Plaintiffs' attention, Plaintiffs' reply brief does not address the point.

[11] We grant the City's unopposed request for judicial notice of the Transient Occupancy Tax, Municipal Code section 35.0101 et seq.

28

"which the 2012 Renewal Resolution complied with by specifying the terms of the tax." This argument fails because (1) *Ponderosa Homes* relates not to an assessment invoking Proposition 26, but rather the 180-day statute of limitations under Government Code section 66020 for challenges to fees on development (*Ponderosa Homes*, *supra*, 23 Cal.App.4th at pp. 1764-1766); and (2) even assuming that "impose" means to "establish," it was not the Procedural Ordinance, but rather the City Council's resolution (R-307843), that established (levied) the assessments Plaintiffs challenge here.

E. *No Leave to Amend*

In the reply brief, Plaintiffs contend the trial court abused its discretion in not granting leave to amend. However, Plaintiffs did not make this argument in their opening brief and, therefore, the issue is forfeited. (*People v. Roscoe* (2008) 169 Cal.App.4th 829, 840 [issues not raised in the opening brief are forfeited].)

Moreover, even if we were to consider the argument, we would find no abuse of discretion in denying leave to amend. To meet their appellate burden here, Plaintiffs must submit a proposed amended complaint (which they have not done) or "enumerate the facts and demonstrate how those facts establish a cause of action." (*Cantu v. Resolution Trust Corp.* (1992) 4 Cal.App.4th 857, 890.) Plaintiffs failed to do so both in the trial court and here on appeal. Even in their reply brief, Plaintiffs do not state what additional facts they could allege that would cure the legal deficiencies in their complaint.

III. *DEFENDANTS' MOTION FOR APPELLATE SANCTIONS IS DENIED*

Defendants seek $25,149 in appellate sanctions against Plaintiffs' lawyers for pursuing what Defendants contend is a frivolous appeal. We notified counsel that we

would consider the sanctions issue concurrently with the appeal, and Plaintiffs filed opposition.

A. *Legal Standards*

Code of Civil Procedure section 907 provides: "When it appears to the reviewing court that the appeal was frivolous or taken solely for delay, it may add to the costs on appeal such damages as may be just." Sanctions may be imposed when an appeal is prosecuted for an improper motive, such as to harass the respondent or delay finality, *or* when the appeal indisputably has no merit—"'when any reasonable attorney would agree that the appeal is totally and completely without merit.'" (*Kleveland v. Siegel & Wolensky, LLP* (2013) 215 Cal.App.4th 534, 556 (*Kleveland*); see also Cal. Rules of Court, rule 8.276(a)(1).)

"In determining whether an appeal indisputably has no merit, California cases have applied both subjective and objective standards. The subjective standard looks to the motives of the appealing party and his or her attorney, while the objective standard looks at the merits of the appeal from a reasonable person's perspective." (*Kleveland*, *supra*, 215 Cal.App.4th at p. 556.) Whether the party or attorney acted in an honest belief there were grounds for appeal is irrelevant "if any reasonable person would agree the grounds for appeal were totally and completely devoid of merit." (*Id.* at pp. 556-557.) The objective and subjective standards "are often used together, with one providing evidence of the other. Thus, the total lack of merit of an appeal is viewed as evidence that appellant must have intended it only for delay." (*In re Marriage of Flaherty* (1982) 31 Cal.3d 637, 649 (*Flaherty*).)

30

In determining whether an appeal is frivolous, courts recognize that counsel and their clients have a right to present issues that are arguably correct, even if it is extremely unlikely that they will prevail on appeal. (*Flaherty*, *supra*, 31 Cal.3d at p. 650.) "An appeal that is simply without merit is not by definition frivolous and should not incur sanctions." (*Ibid*., italics omitted.)

B. *Analysis*

Defendants contend the appeal is completely devoid of merit because all challenges to the validity of the renewal assessment are barred by the 60-day statute of limitations under the validation statutes. To place the analysis of this issue in context, we briefly summarize validation procedure.

A validation action is one that permits a public agency to establish that certain actions it takes are valid and immune from further attack. Code of Civil Procedure section 860 provides: "A public agency may upon the existence of any matter which under any *other law* is authorized to be determined pursuant to this chapter, and for 60 days thereafter, bring an action in the superior court of the county in which the principal office of the public agency is located to determine the validity of such matter. The action shall be in the nature of a proceeding in rem." (Italics added.) Code of Civil Procedure section 863 provides that if no validation proceeding is brought by the public agency, "any interested person" may do so within the 60-day period. An action brought by "any interested person" to contest the validity of governmental action under Code of Civil Procedure section 860 is "commonly known as a reverse validation action." (*City of San Buenaventura v. United Water Conservation Dist.* (2017) 3 Cal.5th 1191, 1201.)

31

If the public agency does not bring a validation proceeding, its action will "become immune from attack if no interested person brings a proceeding to establish the act's validity or invalidity within 60 days." (*Kaatz v. City of Seaside* (2006) 143 Cal.App.4th 13, 30 (*Kaatz*).)

Whether an action is subject to the validation procedures is an important determination because validation proceedings result in an expedited and definitive ruling regarding the validity or invalidity of certain actions taken by public agencies. The ruling in a validation action is definitive because it is an in rem proceeding that, once proper constructive notice is given, results in a judgment that is binding against the world and cannot be collaterally attacked, even on constitutional grounds. (*Colonies Partners, L.P. v. Superior Court* (2015) 239 Cal.App.4th 689, 694.)

Code of Civil Procedure sections 860 and 863 do not specify the matters to which the validation procedure applies. Rather, a court must ascertain whether some "other law" has declared the particular claim or action to be subject to validation. In *Kaatz*, *supra*, 143 Cal.App.4th 13, the court noted there were more than "200 statutes that provide for validating proceedings . . . ." (*Id*. at p. 31, fn. 19.) For example, statutes provide for validation actions to determine the validity of redevelopment plans (Health & Saf. Code, § 33501, subd. (a)), certain bonds (Gov. Code, § 53359), and the formation of special districts (Gov. Code, § 58200).

Here, Defendants do not rely on any statute enacted by the Legislature to trigger Code of Civil Procedure section 860. Rather, they rely on Municipal Code section 61.2526 which provides:

32

"Action to Determine Validity; Action Contesting Validity

"(a) An action to determine the validity of assessments, contracts, improvements, or activities, or the amendment or approval of a district management plan, including but not limited to an amendment that changes, clarifies, or disestablishes a benefit zone or category of businesses, may be brought by the City or tourism marketing district association pursuant to Chapter 9 (commencing with section 860) of Title 10 of Part 2 of the California Code of Civil Procedure. For such purpose an assessment, contract, improvement, activity, acquisition, plan, or plan amendment shall be deemed to be in existence upon its authorization by the City Council.

"(b) In accordance with California Streets and Highways Code section 36633, the validity of an action identified in subsection (a) above, shall not be contested in any action or proceeding unless the action or proceeding is commenced within 30 days after the matter is deemed to be in existence under that subsection (a). Any appeal from a final judgment in an action or proceeding shall be perfected within 30 days after the entry of judgment." (Italics omitted.)

There are two apparent problems with Defendants' assertion that the complaint is subject to the 60-day validation statute of limitations under Municipal Code section 61.2526, subdivision (a).[12] The first problem is that Defendants' argument creates an internal inconsistency in Municipal Code section 61.2526. If subdivision (a) of the ordinance applies to Plaintiffs' action contesting the assessments (as Defendants assert), then arguably a *60-day* limitation period applies because Municipal Code section 61.2526, subdivision (a) states the validation action is to be brought pursuant to Code of Civil Procedure section 860, and Code of Civil Procedure section 860 contains a 60-day

---

[12]    We requested the parties file supplemental briefs on these issues.

limitation period. However, under subdivision (b) of the same ordinance, an action contesting an assessment is subject to a *30-day* limitation period.

In construing Municipal Code section 61.2526, we strive to harmonize the law and avoid an interpretation that requires any part of the enactment to be ignored. (See *Lopez v. Sony Electronics, Inc.* (2016) 247 Cal.App.4th 444, 449.) An interpretation that avoids inconsistency is that the validation procedure in subdivision (a), with its 60-day limitation period, applies *only* to actions to *validate* assessments brought by the City or the tourism marketing district association—whereas actions to *contest* assessments by others must be commenced within 30 days under subdivision (b) of the same ordinance. This interpretation is further bolstered by Municipal Code section 61.2517, which also provides a 30-day limitation period to actions contesting an assessment. This interpretation also finds some support in *Bonander v. Town of Tiburon* (2009) 46 Cal.4th 646 (*Bonander*), where the court concluded the statutory scheme there allowed a city to commence a validation proceeding, but did not provide for reverse validation actions.[13]

---

13     The statute at issue in *Bonander* was similar to Municipal Code section 61.2526, subdivision (a) in that it identified who could bring a validation action (in that case, "'the legislative body or . . . the contractor'"). (*Bonander*, *supra*, 46 Cal.4th at p. 656.) The *Bonander* court noted that such parties would be interested only in confirming the validity of an assessment, not contesting it. (*Id.* at p. 658.) The court concluded, therefore, that actions to "contest" the validity of the assessment were not governed by the validation procedure. (*Ibid.*) Municipal Code section 61.2526, subdivision (a) is similar to the statutes construed in *Bonander* in that it provides an action to determine the validity of an assessment may be brought "by the City or tourism marketing district association" (italics omitted)—entities that, like their counterparts in *Bonander*—would be seeking to uphold the assessment. However, as Defendants correctly note, the statute in *Bonander* differs from Municipal Code section 61.2526, subdivision (a) by expressly stating that "[n]otwithstanding any other provisions of law [the validation action] shall

34

Defendants disagree with this interpretation. They contend all actions challenging the TMD assessments, including reverse validation actions, are subject to a 30-day limitation period. Defendants assert that as a charter city, the City is free to incorporate the validation statutes by reference (as it has done by referring to Code of Civil Procedure section 860), but at the same time "alter" the validation statutes to provide a 30-day instead of a 60-day limitation period. Thus, although Municipal Code section 61.2526, subdivision (a) expressly incorporates Code of Civil Procedure section 860 by reference, Defendants contend the inference to be drawn from subdivision (b)'s 30-day limitation period is that the City replaced the 60-day limitation period in Code of Civil Procedure section 860 with the 30-day limitation period in Municipal Code section 61.2526, subdivision (b).

For purposes of ruling on Defendants' sanctions motion, it is unnecessary to decide any of these interpretative issues, and we express no opinion on that subject. The relevant point here is that under Municipal Code sections 61.2517 and 61.2526, a reasonable argument can be made that Plaintiffs' action is not subject to validation procedures and, therefore, their appellate arguments challenging the order sustaining the demurrer on that ground are not frivolous.

The second potential problem with Defendants' argument is that it is an open question whether a charter city may self-trigger its actions to be validation proceedings

---

not be brought by any person other than the legislative body or the contractor . . . ." (*Bonander*, *supra*, 46 Cal.4th at p. 656.) Thus, the statutory scheme in *Bonander* expressly excluded reverse validation actions, whereas here such exclusion arises by implication.

under Code of Civil Procedure section 860. Even after a request for supplemental briefing, Defendants are unable to cite any case where the validation statutes have been triggered by a municipal ordinance, as distinguished from a state statute. Indeed, Defendants concede that "no case squarely holds a charter city may establish a cause of action in validation and restrict claims to that form of action . . . ."

The City, a charter city, has """exclusive power to legislate over 'municipal affairs.'""" (*Lippman v. City of Oakland* (2017) 19 Cal.App.5th 750, 756.) However, "'as to matters of statewide concern, charter cities remain subject to state law.'" (*Ibid.*; see also *State Building & Construction Trades Council of California v. City of Vista* (2012) 54 Cal.4th 547 (*Vista*).)[14] If state law is supreme here, Defendants lose their validation argument because, as they concede, even though there are over 200 statutes that trigger validation of various types of governmental action, no such statute directs the public agency action alleged in the complaint to validation.

In determining whether the matter is of statewide concern, courts consider, among other factors, whether there is a "'convincing basis for legislative action originating in extramunicipal concerns, one justifying legislative supersession based on sensible, pragmatic considerations.'" (*Vista*, *supra*, 54 Cal.4th at p. 560.)

There is some indication in the case law, albeit dicta, that only the Legislature can trigger in rem jurisdiction in validation proceedings. From their inception, the validation

---

[14]    For example, because the exercise of eminent domain is a matter of statewide concern, charter cities may not pass legislation exempting themselves from the requirements of statutory rules applicable to the exercise of eminent domain. (See *City and County of San Francisco v. PCF Acquisitionco, LLC* (2015) 237 Cal.App.4th 90, 96.)

36

statutes were enacted to *standardize* the procedure by which public agencies established the validity of certain actions. (*City of Ontario v. Superior Court* (1970) 2 Cal.3d 335, 340.) Towards this end, in *Santa Clarita Organization for Planning & the Environment v. Castaic Lake Water Agency* (2016) 1 Cal.App.5th 1084, the court noted that the Legislature had engaged in a "careful effort to specifically delimit" when validation proceedings are applicable. (*Id.* at p. 1101.) In *Santa Clarita Organization for Planning & the Environment v. Abercrombie* (2015) 240 Cal.App.4th 300, the court stated, "[W]e must ascertain whether the *Legislature* has . . . declared the claim or action to be subject to the validation statutes." (*Id*. at p. 308, italics added.)

In contrast, asserting the City can properly self-trigger validation proceedings by local ordinance, Defendants contend such law "falls within" the City's home rule authority under *Vista*, *supra*, 54 Cal.4th 547. Defendants assert that assessment funding is a municipal affair, and they contend Municipal Code section 61.2526, subdivision (a) "mimics statutory provision for validation of other financing mechanisms . . . ."

Defendants also point out that under Code of Civil Procedure section 860, validation is triggered when provided by "any other law"—a phrase that is broader than "any other 'statute.'" From that, Defendants conclude the Legislature in Code of Civil Procedure section 860 intended to include ordinances along with state statutes as being a potential gateway to validation proceedings.

In the context of this sanctions motion, it is unnecessary to decide the point, and we expressly decline to do so. Plaintiffs reasonably contend the complaint is not subject

to validation proceedings under Code of Civil Procedure section 860.  Accordingly, their appeal challenging the trial court's contrary conclusion is clearly not frivolous.

Defendants also contend the appeal is frivolous because the *SDOG* litigation was a reverse validation action, and the judgment there carries "res judicata" effects barring the complaint.  However, although the entire SDOG litigation record is not before us, from the record here it is fairly debatable whether the SDOG litigation was a reverse validation action.  The City tried to insert words to that effect in the SDOG judgment; however, the trial court struck that language when it entered judgment.  Moreover, SDOG's attorney stated the action was not a reverse validation action, but was "characterized that way in the pleadings only in an abundance of caution."  We do not decide whether the SDOG litigation was or was not a validation action.  The salient fact here is that because the issue is unsettled and unclear, Plaintiffs' appeal on that point is not frivolous.

Moreover, claim preclusion only applies where there is a final judgment "on the merits."  (*Association of Irritated Residents v. Department of Conservation* (2017) 11 Cal.App.5th 1202, 1220.)  The SDOG judgment states the court determined the action was "moot."  A judgment of dismissal based on mootness is not on the merits.  "Quite the opposite, it is a decision that the merits need not be reached because there is no longer a live controversy."  (*Robinson v. U-Haul Co. of California* (2016) 4 Cal.App.5th 304, 322.)

There is one additional reason this appeal is not frivolous.  Although Plaintiffs' attempts to overcome the 30-day statute of limitations was weak, Defendants demurred only to the first, fourth, and fifth causes of action on statute of limitations grounds.  As a

38

result, to obtain a judgment of dismissal, Defendants were required to prevail on the equal protection issue.  Plaintiffs' equal protection argument was unpersuasive, but certainly not frivolous.

## DISPOSITION

The judgment is affirmed.  The motion for sanctions is denied.


NARES, J.

WE CONCUR:


HUFFMAN, Acting P. J.


GUERRERO, J.